Harold D. MASDEN, Appellant,

v.

UNIVERSITY OF ALASKA, Appellee.

No. 5291.

Supreme Court of Alaska.

Oct. 2, 1981.

Peter C. Partnow and Peggy A. Roston, Hellen & Partnow, Anchorage, for appellant.

Robert C. Erwin and Adrienne Fedor Erwin, Smith & Garnett, Anchorage, for appellee.

Before RABINOWITZ, C.J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

**PER CURIAM.**

Harold Masden, appellant, was hired by the University of Alaska to teach at Kuskokwim Community College for the academic year 1975–76. The teaching position was funded by a federal grant from the National Institute of Mental Health. The grant was initially for a one-year period, with a second year's funding contingent upon the University's performance during the first year. It appears that at the time he was hired Masden was made aware of the nature of the funding for his position.

During the first year of his teaching, Masden was informed by a letter dated June 24, 1976, from the acting director of the college that he would be offered a contract for the 1976–77 academic year, but because of the probable lack of funding for the year after the college did not plan to offer him a contract for the 1977–78 year, and the college was accordingly giving him official notice of nonretention. This was reaffirmed by a memorandum dated February 28, 1977. In this memorandum, the Director of Personnel for the University stated that the University would consider Masden's application for any teaching position for which he was qualified.

Throughout the course of his employment with the college, Masden was a member of the Alaska Community Colleges Federation of Teachers ("ACCFT"). In 1976, the ACCFT and the University of Alaska renegotiated a collective bargaining agreement. By the terms of this agreement, tenure at the University was eliminated. In its place, the agreement provided that members who were "laid off" or who were terminated due to a reduction in faculty size would be entitled to be notified of position vacancies and to be hired for the first opening for which the member was qualified.

After the effective date of his nonretention, Masden was not given hiring preference and he eventually filed a grievance against the University. Masden argued first that he had been laid off and was therefore entitled to notification of available positions and hiring preference for such positions. Second, Masden contended that he did not receive proper notice of nonretention. The relief requested by Masden was an award of back pay and reinstatement as a member of the faculty of the college. The University responded that Masden had received proper notice and that he was nonretained and therefore not entitled to the benefits afforded to members who are laid off. Pursuant to the collective bargaining agreement, the matter was submitted to arbitration. A clause in the agreement forbade the arbitrator to make any decision "[c]ontrary to or inconsistent with or modifying or varying in any way the terms of this Agreement."

The arbitrator ruled that the college's official notice of nonretention was in accordance with the notice required by the agreement and was, therefore, valid. The

relevant provision of the agreement states, "Notice of nonretention must be given in writing by the University ... [n]ot later than December 15 of the second academic year of service if the appointment expires at the end of that academic year ...." The arbitrator concluded that the University was required to give notice to Masden on or before December 15, 1976, and that the letter by the acting director dated June 24, 1976, fulfilled this requirement.

The arbitrator also ruled that Masden was nonretained, rather than laid off or terminated because of a reduction in force, and thus not entitled to any hiring preference by the college for positions that were available after his contract expired. The arbitrator based this conclusion on his interpretation of the collective bargaining agreement, the relevant provisions of which are as follows:

> In layoffs or reductions, the University shall first seek to retain those ... members who wish to continue employment with the University by not filling existing vacancies, by attrition, or by offering transfer opportunities....
>
> A. As used in this agreement, nonretention means refusal by the University to make an offer of a new individual full-time employment contract to the affected member ....
>
> B. As used in this agreement, termination means the ending of the employment relationship prior to the expiration of the individual employment contract of the affected member .... It is the intent that termination will be used only in cases involving serious misconduct or layoffs.

> C. Termination or nonretention of a member ... by the University shall be based on just cause.

The arbitrator decided that "the University has the right to nonretain employees because of termination of the underlying grant, without providing layoff rights. Such nonretentions are clearly distinguishable from layoffs or reductions in force, which alone involve layoff rights." He indicated that decisions from other jurisdictions are "uniformly clear that layoffs are intended to be temporary only.... [A] termination of a particular grant does not imply such a temporary suspension of employment unless otherwise stated." The arbitrator therefore ruled in favor of the University and against Masden.

Pursuant to AS 09.43.120,[1] Masden filed a complaint in the superior court seeking to have the arbitrator's ruling vacated. The superior court denied relief without opinion. Masden then brought this appeal. We affirm the judgment.

Masden correctly notes that under AS 09.43.120 the superior court is to vacate an arbitration award if the arbitrator exceeded his power. *See* note 1 *supra.* Masden misinterprets this section, however, to permit judicial review of an arbitrator's decision on the merits. Masden argues that "an arbitration award is subject to judicial review to determine whether the arbitrator has exceeded his powers under the collective bargaining agreement *by an erroneous construction of the contract.*" (Emphasis added.) This argument overlooks our decision in *Alaska State Housing Authority v. Riley Pleas, Inc.*, 586 P.2d 1244 (Alaska 1978), in which we clearly indicated that

---

1. AS 09.43.120 provides in part:

    (a) On application of a party, the court shall vacate an award if
    (1) the award was procured by fraud or other undue means;
    (2) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of a party;
    (3) the arbitrators exceeded their powers;
    (4) the arbitrators refused to postpone the hearing upon sufficient cause being shown for postponement or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 50 of this chapter, as to prejudice substantially the rights of a party; or
    (5) there was no arbitration agreement and the issue was not adversely determined in proceedings under § 20 of this chapter and the party did not participate in the arbitration hearing without raising the objection.
    (b) The fact that the relief is such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

judicial review under AS 09.43.120 of an arbitrator's decision is limited to issues of arbitrability.[2] We stated:

> [T]here are no statutory grounds for review of an arbitrator's determination as to the meaning of contract provisions which do not pertain to the issue of arbitrability. We are, therefore, without authority to do so.
>
> Our holding that an arbitrator's misconstruction of a contract is not open to judicial review, except on questions of arbitrability, is in accordance with what we perceive to be the weight of authority from other jurisdictions having statutes similar to ours.

586 P.2d at 1247 (footnote omitted).[3]

In accordance with *Riley Pleas*, we cannot address Masden's argument that the arbitrator erroneously interpreted the collective bargaining agreement. The only issue properly before us is whether the superior court erred when it implicitly determined that the arbitrator did not exceed his powers in reaching his decision in favor of the University. The arbitrator's powers were specifically limited by the following provision of the collective bargaining agreement: "The arbitrator shall limit his decision strictly to application and interpretation of the provisions of this Agreement, and he shall be without power or authority to make any decision . . . [c]ontrary to or inconsistent with or modifying or varying in any way the terms of this Agreement."

■■■ Our review of the collective bargaining agreement and the arbitrator's decision leads us to conclude that the arbitrator's decision was not contrary to or inconsistent with the agreement and did not modify or vary in any way the terms of the agreement. The benefits sought by Masden under the agreement are available only to faculty members who were laid off or who were terminated due to a reduction of faculty size. The arbitrator's interpretation of the agreement, that the nonretention of a faculty member because of a loss of funding for the position does not constitute a layoff or reduction in force, did not alter, modify or contradict any provision of the agreement. Similarly, the arbitrator did not exceed his powers in determining that the University's notice of nonretention was sufficient and valid under the agreement. Masden argues that the notice was ambiguous and was given too early. The arbitrator's decision that the notice was unambiguous is not subject to judicial review. As to Masden's second argument, the collective bargaining agreement merely established a date by which notice must have been given; there is no provision indicating that notice given before a certain time is inadequate. Again, the arbitrator's decision did not alter, modify or contradict the collective bargaining agreement.

The judgment is accordingly AFFIRMED.

■

---

**2.** As we recently indicated in *City of Fairbanks v. Rice*, 628 P.2d 565, 567 (Alaska 1981), arbitration proceedings that are not governed by the Uniform Arbitration Act contained in AS 09.43.010– .220 are reviewed differently. *See* AS 09.43.010, exempting labor-management contracts from the Act unless the Act is incorporated into the contract by reference or statute. The Act is expressly incorporated into this contract between the University and ACCFT.

**3.** Masden argues that this language does not mean what it says because it would, for example, preclude judicial review of an arbitrator's decision upholding termination of an employee based on his or her sex or race. This argument is without merit. To the extent that an employee has rights that are guaranteed by law, he or she has noncontractual remedies for their protection. Arbitration is solely a contractual mechanism, designed to protect the worker from abuses of contractual rights.