**AHTNA, INC., Appellant,**

v.

**EBASCO CONSTRUCTORS, INC., f/k/a Frank Moolin and Associates, Inc., f/k/a Enserch Alaska Services, Inc., Appellee.**

**No. S–5841.**

Supreme Court of Alaska.

May 12, 1995.

John Ahlers and Herbert A. Viergutz, Barokas & Martin, Anchorage, for appellant.

Robert J. Dickson, Atkinson, Conway & Gagnon, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON, and EASTAUGH, JJ.

*ORDER*

On consideration of the petition for rehearing, filed on March 17, 1995, and the corrected petition for rehearing, filed on March 20, 1995,

IT IS ORDERED:

1. The petition for rehearing is DENIED.

·2. However, the opinion is modified to overrule the approach taken in *Anchorage Medical & Surgical Clinic v. James,* 555 P.2d 1320, 1323 (Alaska 1976). Accordingly, Opinion No. 4178, issued on March 10, 1995, is WITHDRAWN, and Opinion No. 4199 is issued today in its place. The modification is found at page 11 of Opinion No. 4199.

Entered by direction of the court at Anchorage, Alaska on May 12, 1995.

MOORE, Chief Justice.

## I.  INTRODUCTION

In this appeal from an arbitration proceeding, the superior court vacated Ahtna's arbitration award after concluding that the arbitrator exceeded his power by resolving a non-arbitrable dispute. We reverse.

## II.  FACTS AND PROCEEDINGS

In 1988 the U.S. Air Force was considering locating the Alaska Radar System Over–the–Horizon Backscatter Radar Project ("the Project") on lands owned by Ahtna, Inc. ("Ahtna"). A leading general contractor candidate on this project was General Electric Co. ("GE"). In February 1988 Enserch Alaska Services, Inc. ("Enserch"), a predecessor to Ebasco Constructors, Inc. ("Ebasco"), entered into an agreement ("the Teaming Agreement") with GE. The Teaming Agreement called for Enserch to assist GE in securing the Project's prime contract for GE, which would then enter into a subcontract with Enserch.

In May 1989 Ahtna and Enserch entered into a joint venture agreement ("JVA"). The purpose of the Joint Venture was to obtain, perform, and receive payment for "contracting opportunities in the design, construction, testing, and operations maintenance" of the Project. Section 22 of the JVA provided that: "All disputes arising out of this Agreement shall be resolved by arbitration under the Commercial Rules of the American Arbitration Association and subject to the provisions of Alaska's Uniform Arbitration Act, AS 09.43.010, *et seq.*"

At the time the JVA was executed, the Project was still in its preliminary stages: the Air Force had not yet selected a project site or a general contractor and it was uncertain whether the Project would actually be built; additionally, GE had the option to subcontract with parties other than the Ahtna/Enserch Joint Venture. However, in an attempt to secure a Project sub-contract, the Joint Venture submitted to GE three construction proposals and two revisions. In so doing, it incurred significant expenses.

In November 1990 Ebasco notified GE that the Joint Venture intended to submit a claim for compensation, based upon implied contract, seeking remuneration for the extraordinary costs incurred in the proposal and design work. The letter stated that Ebasco would submit "a claim for impact and proposal costs, to include those of our Joint Venture partner, Ahtna." Two months later, GE advised Ebasco that the government had canceled the Project.

Ebasco directed Ahtna to prepare a claim reflecting the losses and expenses incurred in the creation of the construction proposals. In March 1991 Ahtna submitted to Ebasco its claim for costs and expenses in the amount of $1.7 million. Ebasco did not submit Ahtna's claim for many months, however, despite a number of unsuccessful inquiries by Ahtna aimed at speeding up the process. According to Ahtna, Ebasco's inaction eventually doomed the claim by "inexplicably fail[ing] to submit the claim ... within ... one year," as required by federal regulations. In January 1992 Ahtna filed a demand for arbitration.

The parties stipulated to $1.7 million in damages and arbitrated only the issue of liability. In a July 1992 arbitration, Ahtna prevailed on its claim for $1,700,003 plus costs and fees. As he later explained in supplemental findings, the arbitrator held that Ebasco had breached the JVA in two ways.

First, the arbitrator found that Ebasco had breached sections 4 and 7.2 of the JVA by failing to timely submit Ahtna's claim through GE to the government. Under section 4, each venturing party owed the other an obligation to "use its best efforts to carry out the purposes of [the JVA and] to cooperate fully with the other Joint Venturer." Section 7.2 provided that the "general supervision and management of the [Joint Venture] work" along with "other matters relating thereto" were "under the ... control of the Sponsor." Ebasco was designated the Joint Venture "Sponsor" in section 7.1. This basis for the arbitration award is hereinafter termed the "tardy claim rationale."

Second, notwithstanding the dispute over Ebasco's submission of Ahtna's claim, the arbitrator found that Ebasco had breached

sections 5.1, 5.2, and 11.7 of the JVA by simply failing to compensate Ahtna for the $1.7 million in expenses incurred in preparation of the Project proposals. Section 5.1 of the JVA stated that it was "expressly understood and agreed ... that Ahtna ... shall not be liable for any losses in performance of the Joint Venture work." Section 11.7 obligated the Joint Venture "as soon as reasonably practicable ... [to] reimburse the Joint Venturers for all expenses incurred in connection with the preparation of the Proposal for ... [the Project] as determined in accordance with section 5.2." Section 5.2 provided that "[p]roposal costs ... related to the Project ... will be submitted to the [Joint Venture] Management Committee for approval," and "paid in accordance with Section 11.7." [1] This basis for the arbitral award is hereinafter termed the "reimbursement rationale."

In August 1992 Ahtna moved in superior court for confirmation of the award. Ebasco opposed the motion and moved, pursuant to Alaska's Uniform Arbitration Act ("the Act"), to vacate the award.

The superior court ordered and received a clarification of the arbitrator's decision and then, following two subsequent hearings, vacated the arbitrator's award. The court's opinion discussed only the "tardy claim rationale;" it concluded that under that theory of liability Ebasco's obligation to submit Ahtna's claim "arose after the [JVA] terminated." The court found that since "[t]he claim upon which the award is based does not arise out of the [JVA]," and since "[n]o agreement existed to arbitrate claims arising out of extra-contractual promises or an implied contract," the dispute was not arbitrable. Consequently, the court held that the arbitrator had "exceeded his power" and vacated the award under AS 09.43.120. [2]

1. Section 5.2 also provided that proposal costs would be submitted "within thirty (30) days following receipt of an award of a Contract from GE and/or the USAF," and said that "[i]f no Contract is awarded to the Joint Venture then each Joint Venturer incurring such costs shall be solely responsible therefor." The arbitrator, however, found that Ahtna had commenced performance pursuant to an implied-in-fact contract between GE and the government; therefore, he deemed this portion of section 5.2 inapplicable.

2. AS 09.43.120(a) sets out five grounds upon which an arbitrator's award shall be vacated. Relevant to this case are the statute's directives that courts shall vacate an award when

(3) the arbitrators exceeded their powers;
(4) the arbitrators refused to postpone the hearing upon sufficient cause being shown for postponement or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions

## III. DISCUSSION

On appeal, Ahtna argues: (1) that the lower court erred by ignoring the arbitrator's reimbursement rationale, which Ahtna believes to be an independent basis for enforcing the arbitral award; and (2) that the court erred in rejecting the arbitrator's tardy claim rationale.[3]

In support of the superior court's order, Ebasco mounts two attacks on the substance of the arbitration award. First, Ebasco asserts that the award should be vacated under AS 09.43.120(a)(5). It argues that Ahtna's claim consisted solely of a complaint that Ebasco had not pursued Ahtna's claim for compensation, and that such a claim was not arbitrable under the terms of the JVA because it arose after the Joint Venture terminated. Ebasco bases this contention on section 24 of the JVA, which states:

> This Agreement shall remain in effect and the Joint Venture shall continue until the earlier of the following:
>
> (a) The United States shall have announced it is abandoning construction of the Project.

Second, Ebasco argues under AS 09.43.120(a)(3) that the arbitrator "exceeded his powers" by interpreting the JVA in a way that was not reasonably possible. According to Ebasco, the arbitral award is irreconcilable with sections 5.2 and 16.1 of the JVA. Section 5.2 states that "[i]f no Contract is awarded to the Joint Venture then each Joint Venturer incurring such costs shall be solely responsible therefor." Ebasco argues that despite the arbitrator's finding that an implied-in-fact contract existed between the government and GE, this provision of section 5.2 applies because there was no privity between the Joint Venture and GE or the

government. Section 16.1 states that "[i]n no event shall any Joint Venturer be liable to any other Joint Venturer ... for the acts and omissions of any of its officers ... except for direct (but not consequential) damages resulting from actual fraudulent or dishonest conduct."[4]

### A. Standard of review: An arbitrator's "conclusions of law" may not be reviewed on the merits

Whether the dispute between the parties was arbitrable under the JVA and whether the arbitral award violated AS 09.43.120(a) are questions of law. Accordingly, our review of the lower court's decision is *de novo*. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

The *arbitrator's* findings of both fact and law, however, receive great deference. As we have long made clear, a highly deferential standard of review is appropriate with regard to arbitral awards, since arbitration is "essentially a creature of contract ... in which the parties themselves charter a private tribunal for the resolution of their disputes." *Nizinski v. Golden Valley Elec. Ass'n*, 509 P.2d 280, 283 (Alaska 1973) (quoting *Astoria Medical Group v. Insurance Plan of Greater New York*, 11 N.Y.2d 128, 227 N.Y.S.2d 401, 403, 182 N.E.2d 85, 87 (1962)). Accordingly, as a matter of both policy and law, we are "loathe to vacate an award made by an arbitrator." *Department of Pub. Safety v. Public Safety Employees Ass'n*, 732 P.2d 1090, 1093 (Alaska 1987).

Under Alaska law it is clear that when, as here, the arbitration proceeds under the terms of Alaska's Uniform Arbitra-

---

of AS 09.43.050, as to prejudice substantially the rights of a party;

(5) there was no arbitration agreement and the issue was not adversely determined in proceedings under AS 09.43.020 and the party did not participate in the arbitration hearing without raising the objection.

AS 09.43.120(a).

**3.** Ahtna also claims that Ebasco waived its right to contest arbitrability by participating in the arbitration instead of filing suit for a determination of arbitrability under AS 09.43.020. The superior court did not address this issue in its

order, and we find the claim moot, given our holding that this dispute was arbitrable.

**4.** Ebasco also argues, under AS 09.43.120(a)(4), that the award should be vacated (1) because the arbitrator refused to postpone the hearing after sufficient cause had been shown; and (2) because Ebasco did not receive a specific explanation of Ahtna's complaint until approximately one month before the arbitration. These issues were not addressed by the trial court, and may be considered on remand.

tion Act, the arbitrator's findings of fact are unreviewable, even in the case of gross error. *Breeze v. Sims*, 778 P.2d 215, 217 (Alaska 1989).

Ebasco claims that the standard of review with regard to an arbitrator's "conclusions of law" is found in the following passage of *Breeze v. Sims*: "the arbitrator's construction of the contract will be reviewed to determine whether it 'is a reasonably possible one that can be seriously made in the context in which the contract was made.'" 778 P.2d at 217 (quoting *University of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132, 1137 (Alaska 1974)). Ebasco argues that the arbitrator's interpretation of the JVA could not be "seriously made," and therefore urges us to affirm the superior court's vacation of the award.

Ebasco is wrong to contend that Alaska law allows courts to routinely review the merits of an arbitrator's legal conclusions. An examination of *Breeze* and *Modern Construction* reveals that the language Ebasco proffers here represents the standard of review for examining the arbitrator's construction of the contract *with regard to arbitrability.* As we have elsewhere held, "[t]here are no statutory grounds for review of an arbitrator's determination as to the meaning of contract provisions which do not pertain to the issue of arbitrability." *Alaska State Housing Auth. v. Riley Pleas, Inc.*, 586 P.2d 1244, 1247 (Alaska 1978). "We clearly indicated [in *Riley Pleas*] that judicial review under AS 09.43.120 of an arbitrator's decision is limited to issues of arbitrability.... In accordance with *Riley Pleas*, we cannot address [an] argument that the arbitrator incorrectly interpreted the collective bargain-

ing agreement," unless such an argument is limited to a dispute over the meaning of the arbitration clause. *Masden v. University of Alaska*, 633 P.2d 1374, 1376–77 (Alaska 1981) (footnote omitted).

Ebasco asserts that Professor Pirsig, whose article was the source for the language quoted in *Modern Construction* and later in *Breeze*, would have applied the "reasonably possible" standard to the arbitrator's act of contractual interpretation. *See* Pirsig, *Some Comments on Arbitration Legislation and the Uniform Act*, 10 Vand.L.Rev. 685, 706 (1957). This may be true, but such a standard of review has been rejected by both federal and state courts. As the United States Supreme Court explained:

> It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*United Steel Workers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).[5]

Thus what we said in *Riley Pleas* remains true today: "Our holding that an arbitrator's misconstruction of a contract is not open to judicial review, except on questions of arbitrability, is in accordance with what we believe to be the weight of authority in jurisdictions similar to ours." 586 P.2d at 1247. Both parties in this case have expended great resources rearguing the merits of an already arbitrated dispute. In order to prevent such wasteful and unnecessary activity in future cases, we clearly state that the principle enunciated in *Riley Pleas* accurate-

---

5. *See also Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 10 Cal.Rptr.2d 183, 200, 832 P.2d 899, 916 (1992) ("It is well settled that 'arbitrators do not exceed their power merely because they assign an erroneous reason for their decision.'"); *Morrison Knudsen Co. v. Makahuena Corp.*, 66 Haw. 663, 675 P.2d 760, 766 (1983) ("[T]he fact that an arbitrator may err in applying the law, finding facts, or in construing the contract, or enters an award that is contrary to the evidence adduced, is insufficient grounds for judicial reversal."); *Bingham County Comm'n v. Interstate Elec. Co.*, 105 Idaho 36, 665 P.2d 1046, 1052 (1983) ("Arbitrators are the final judges of law and fact."); *Evans Elec. Constr. v. Medical Ctr.*, 230 Kan. 298,

634 P.2d 1079, 1087 (1981) ("Where parties have agreed to be bound by a submission to arbitration, errors of law and fact, or an erroneous decision of matters submitted to the judgment of the arbitrators, are insufficient to invalidate an award fairly and honestly made."); *Binghamton Civil Serv. Forum v. City of Binghamton*, 44 N.Y.2d 23, 403 N.Y.S.2d 482, 484, 374 N.E.2d 380, 382 (1978) ("[O]nce the issue is properly before the arbitrator, questions of law and fact are merged in the award and are not within the power of the judiciary to resolve."); *Brewer v. Allstate Ins. Co.*, 248 Or. 558, 436 P.2d 547, 549 (1968) ("Neither a mistake of fact or law vitiates an [arbitral] award.").

ly describes the standard of review with regard to an arbitrator's interpretation of a contract with regard to questions other than arbitrability. To the extent that any of our previous opinions have taken a contrary approach, *see, e.g., Anchorage Medical & Surgical Clinic v. James,* 555 P.2d 1320, 1323 (Alaska 1976), they are overruled. Accordingly, we reject Ebasco's invitation to revisit the merits of this dispute, and will scrutinize only the arbitrator's conclusion that Ahtna presented him with an arbitrable dispute.[6]

### B. *The superior court erred in finding this dispute non-arbitrable*

■ Having established that the question of arbitrability is the only substantive issue to be reviewed by this court, we turn to a review of the superior court's decision. In light of Alaska's "strong public policy in favor of arbitration," we apply a presumption in favor of arbitrability. *Modern Constr.,* 522 P.2d at 1138. Any ambiguity with regard to arbitrability is to be construed in favor of arbitration, "especially where, as here, the party contesting arbitrability drafted the contract." *Id.*

■ Thus with regard to this narrow question of the arbitrator's interpretation of the arbitration clause, the *Modern Constr./ Breeze* standard is indeed applicable: if the arbitrator's determination of arbitrability is "a reasonably possible one that can seriously be made in the context in which the contract was made," then the court should affirm that finding.[7] *Modern Constr.,* 522 P.2d at 1137 (citations omitted). With this standard in mind, it is apparent that the superior court

doubly erred in finding this dispute non-arbitrable.

### 1. *The court failed to consider a legitimate and independent basis for the award*

■ Ahtna argues that the superior court should have upheld the arbitral award based on the "reimbursement rationale"—the arbitrator's finding that, under sections 5.1, 5.2, and 11.7 of the JVA, Ebasco was obligated to reimburse Ahtna for expenses incurred and/or partially performed work. We agree.

The reimbursement rationale amounts to a finding that Ebasco became liable to Ahtna at the time when Ahtna executed Project proposals and incurred expenses. Since those events took place while the JVA was indisputably in effect, it follows that the reimbursement rationale was a means to resolve a dispute arising under the contract. This was clearly within the arbitrator's power, given JVA section 22's command that "[a]ll disputes arising out of this Agreement shall be resolved by arbitration."

Ebasco disputes this conclusion, arguing that Ahtna's initial arbitral claim nowhere indicated that Ahtna sought reimbursement under sections 5.1, 5.2, and 11.7. Instead, Ebasco argues that the dispute was only about its alleged failure to submit Ahtna's claim.[8] According to Ebasco, any arbitral award not based on a "tardy claim" is therefore illegitimate.

Ebasco cites *Sea Star Stevedore Co. v. International Union of Operating Eng'rs Local 302,* 769 P.2d 428 (Alaska 1989), in support of its contention that "by going be-

---

**6.** Under AS 09.43.120, a number of the arbitrator's *procedural* decisions—such as his decision to deny Ebasco a continuance—are also subject to review. As explained in n. 4 *supra,* Ebasco's claim under AS 09.43.120(a)(4) should be considered by the trial court on remand. Again, this is an area where the policies in favor of arbitration dictate a deferential review of arbitral decisions. *See, e.g., Storey v. Searle Blatt, Ltd.,* 685 F.Supp. 80, 82 (S.D.N.Y.1988) ("The granting or denying of an adjournment falls within the broad discretion of appointed arbitrators.").

**7.** The United States Supreme Court has prescribed a similar approach when determining the arbitrability of a dispute:

An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute. Doubts should be resolved in favor of coverage.

*United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960).

**8.** Ahtna disputes this characterization of its original arbitral claim, and notes that during the course of the arbitration proceedings it argued the points contained in the reimbursement rationale.

yond the scope of the claim as it had been submitted, the arbitrator exceeded his powers." In *Sea Star,* an arbitrator ordered the reinstatement of a discharged worker, but the worker was subsequently laid off as part of a cost-cutting program. The union sued to enforce the arbitration award by having the employee reinstated, and the superior court remanded the issue to the arbitrator for a resolution of the dispute over the second layoff. We held that the arbitrator did not have jurisdiction to reach the merits of the economic layoff because the dispute the parties had originally submitted to him concerned a discharge for violation of company policy and insubordination.

In *Sea Star* "the sole issue submitted [to the arbitrator], as defined by [the arbitrator], was whether the *initial* discharge was violative of the collective bargaining agreement." 769 P.2d at 431 (emphasis added). When the *Sea Star* arbitrator resolved the dispute about the second, economic layoff, he exceeded his jurisdiction. Ebasco contends that the only issue before the arbitrator in this case was Ebasco's alleged failure to timely file Ahtna's claim, and that by partly basing his award on a separate theory—the reimbursement rationale—the arbitrator exceeded his jurisdiction in violation of *Sea Star.*

The error in this argument is evident. In *Sea Star* this court forbade an arbitrator from resolving a *dispute* that was not brought before him by the parties. In this case, there are not two disputes, but one: whether Ebasco breached the JVA, thereby owing Ahtna $1.7 million. Here, the arbitrator has merely given a *basis* for the award which differs from that which, according to Ebasco, was initially argued by the claimant.

We have explained above that the arbitrator's reasons for the award will not be scrutinized by the court, so long as he has resolved an arbitrable dispute. The reimbursement rationale rests on the arbitrator's interpretation of various JVA provisions and his findings regarding Ebasco's contractual obligations during the life of the Joint Venture. As such, it resolves a dispute that arises out of the contract, constitutes a proper basis for the award, and convinces us to reverse the superior court's decision.

2. *The court erred in concluding that because Ebasco's alleged duty to file Ahtna's claim arose after the JVA terminated the dispute was non-arbitrable*

Ebasco argues that under section 24(a) of the JVA, the Joint Venture terminated immediately upon the parties' learning that the government had cancelled the Project. Proceeding from this premise, Ebasco believes the issue of the tardy claim is resolved by an established principle of contract law: "Once [a] business arrangement has terminated, the activities of former confederates are transacted in their individual capacities and not in their capacities as joint venturers.... Thus, to the extent a fiduciary relationship existed, it was terminated prior to the purported breach in the present case." *National Soil Servs., Inc. v. Hurst,* 630 P.2d 3, 7 (Alaska 1981).

This argument is misplaced. *National Soil* states merely that parties no longer incur obligations to each other after the termination of a partnership agreement or joint venture. But as Ahtna points out, disputes over obligations arguably arising from an expired contract are arbitrable. *See Nolde Bros., Inc v. Local No. 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 249, 97 S.Ct. 1067, 1070, 51 L.Ed.2d 300 (1977). Thus if Ebasco's *obligation* to timely file Ahtna's claim arose during the term of the JVA, it matters not that Ebasco's *breach* occurred after the JVA expired.

The arbitrator's supplemental findings contain his conclusion that Ebasco's position as "Sponsor" of the Venture obligated Ebasco to submit a claim as soon as Ahtna incurred expenses that were reasonably considered compensable. Even by Ebasco's account of the JVA's duration, this type of obligation clearly would have arisen before the date of the Project's termination, when the JVA was still operative.

Whether Ebasco incurred such an obligation turns on an interpretation of the substantive provisions of the JVA. This is a task, however, that under *Riley Pleas* is left to the arbitrator. The superior court was

not entitled to substitute its judgment for the arbitrator's on this matter. Rather, the lower court should have applied a presumption of arbitrability, and reviewed for reasonableness the arbitrator's decision that the dispute was arbitrable. We hold that the arbitrator could have reasonably concluded that Ebasco's failure to submit Ahtna's claim breached obligations that arose while the JVA was in effect. Consequently, the superior court's rejection of the tardy claim rationale is reversed.

## IV. CONCLUSION

We REVERSE the superior court's determination that this dispute was not arbitrable, and REMAND for consideration of Ebasco's AS 09.43.120(a)(4) claim.