LEXINGTON MARKETING GROUP,
INC., Appellant,

v.

GOLDBELT EAGLE, LLC, Appellee.

No. S–12171.

Supreme Court of Alaska.

May 4, 2007.

William F. Cummings and Douglas K. Mertz, Juneau, for Appellant.

Eric A. Kueffner, Faulkner Banfield, P.C., Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Goldbelt Corporation is a majority shareholder of both Goldbelt Eagle, LLC and CP Leasing, Inc. Goldbelt Eagle entered into a contract for marketing services with Lexington Marketing Group (Lexington), a Virginia corporation wholly owned by Lisbeth Gnugnoli. The agreement contained an arbitration clause. In May 2005 Lexington filed a complaint in superior court, requesting that the court compel arbitration of a dispute over whether Goldbelt Eagle owed it compensation for a referral under the marketing contract. The superior court granted summary judgment to Goldbelt Eagle, ruling that Lexington's agreement with Goldbelt Eagle became unenforceable on public policy grounds when Gnugnoli became an employee of CP Leasing. Lexington appeals, claiming the superior court erred under federal and state law when it adjudicated the validity of the underlying contract. We conclude that federal and state arbitration law prohibit courts from adjudicating the validity of the underlying contract when determining arbitrability. We hold that the arbitration agreement covers Lexington's claim, and we reverse the decision of the superior court.

## II. FACTS AND PROCEEDINGS

Goldbelt is a corporation formed pursuant to the Alaska Native Claims Settlement Act. Goldbelt is a majority shareholder in several business entities, including Goldbelt Eagle, LLC and CP Leasing, Inc. Goldbelt Eagle and CP Leasing are eligible to receive preferences in government contracts under the United States Small Business Administration's Section 8(a) program, which is designed to "assist eligible small disadvantaged business concerns [to] compete in the American economy through business development." [1]

In August 2001 Lisbeth Gnugnoli incorporated Lexington Marketing Group, Inc. (Lexington), a Virginia corporation licensed to do business in Alaska and wholly owned by Gnugnoli. Lexington provides marketing services to assist corporations in obtaining government contracts. On August 27, 2001, Lexington entered into an agreement with CP Leasing to provide marketing services related to Section 8(a) contracts.

Goldbelt formed Goldbelt Eagle in December 2001 as a vehicle for Section 8(a) contracts. In October 2002 Goldbelt Eagle entered into an agreement with Lexington for marketing services. The agreement provided that Goldbelt Eagle would pay Lexington a commission of twenty percent of gross profits from business opportunities registered by Lexington.

In October 2003 Gary Droubay, the Chief Operating Officer of Goldbelt, Inc., offered Gnugnoli employment with CP Leasing. Her job was to identify opportunities for CP Leasing to obtain Section 8(a) contracts. The parties agreed that when Gnugnoli became an employee of CP Leasing, she would no longer be paid commissions on the Lexington contract with CP Leasing. The parties dispute whether this agreement also terminated Lexington's contract with Goldbelt Eagle.

In the spring of 2004 Gnugnoli learned of a contract opportunity to provide training for Army personnel. She met with representatives of a Virginia corporation willing and able to subcontract the work for a Section 8(a) entity such as Goldbelt Eagle or CP Leasing. Gnugnoli referred the opportunity to Goldbelt Eagle. In an evidentiary hearing before the superior court, Gnugnoli claimed she referred the opportunity to Goldbelt Eagle because the contract called for personnel

---

**1.** *See* 13 C.F.R. § 124.1 (2006).

services, which she claimed CP Leasing was not equipped to provide. Gnugnoli then requested a commission for the referral. Goldbelt Eagle refused payment on the ground that the agreement between Goldbelt Eagle and Lexington was void as of October 2003, when Gnugnoli became an employee of CP Leasing.

In May 2005 Lexington filed a complaint in superior court, requesting that the court compel arbitration under AS 09.43.020.[2] Lexington invoked an arbitration clause in its agreement with Goldbelt Eagle. That clause provides: "All disputes or claims arising under this Agreement shall be submitted to binding arbitration before a single arbitrator in Juneau, Alaska if demand for arbitration is made in a notice given by either party."

Goldbelt Eagle filed a motion for summary judgment on July 6, 2005, arguing that the entire agreement—including the arbitration provision—became void when Gnugnoli became an employee of CP Leasing. On July 21, 2005, Lexington filed a cross-motion for summary judgment, claiming genuine issues of material fact should prevent Goldbelt Eagle from prevailing and requesting that the court refer the matter to an arbitrator.

The superior court initially found that "there was an apparent factual dispute as to whether the parties agreed to terminate the Lexington Agreement between Gnugnoli and Goldbelt Eagle, which in turn contains the arbitration agreement, when Ms. Gnugnoli accepted employment with CP Leasing." The court held an evidentiary hearing on October 24, 2005. On November 8, 2005, the superior court granted Goldbelt Eagle's motion for summary judgment. The court found that Goldbelt Eagle's agreement with Lexington was unenforceable on public policy grounds. It reasoned that Gnugnoli "could not ethically seek opportunities for Goldbelt Eagle and be privately remunerated pursuant to the Lexington Agreement without in turn violating her duty of loyalty to CP Leasing since both 8(a) firms are capable of bidding on the same projects." The superior court concluded that the agreement became impossible to perform without violation of fiduciary duty following Gnugoli's employment with CP Leasing and ruled that there was no duty to arbitrate claims related to an unenforceable agreement.

Lexington filed this appeal of the superior court's ruling. Lexington claims that the trial court violated federal and state law by refusing to compel arbitration and further contends that the trial court erred in granting summary judgment.

## III. DISCUSSION

### A. Standard of Review

 Whether Lexington's claim is arbitrable is a question of law subject to de novo review.[3] We "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[4] We "affirm a grant of summary judgment if there are no genuine issues of material fact and if the movant is entitled to judgment as a matter of law. When making this determination, we draw all reasonable inferences in favor of the non-movant."[5]

### B. The Superior Court Had Jurisdiction To Decide Arbitrability.

 Lexington first challenges the superior court's jurisdiction to decide the question of arbitrability—in other words, to decide whether the terms of the agreement called for the dispute to be referred to an arbitrator. It argues that in the absence of allegations of fraud or unconscionability with respect to the arbitration agreement itself, only the arbitrator can determine arbitrabili-

---

2. AS 09.43.020(a) provides:
 On application of a party showing an agreement described in AS 09.43.010, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue and if the agreement is found to exist shall order arbitration.

3. *Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 660 (Alaska 1995).

4. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

5. *Alakayak v. British Columbia Packers, Ltd.*, 48 P.3d 432, 447 (Alaska 2002) (internal citations omitted).

ty. Goldbelt Eagle responds that the court properly decided arbitrability. Because federal and state arbitration law provide courts with jurisdiction to decide arbitrability, we agree with Goldbelt Eagle that the superior court had jurisdiction to decide arbitrability.

A dispute is arbitrable under federal law if the agreement "creates a duty for the parties to arbitrate the particular" dispute.[6] The United States Supreme Court has repeatedly held that courts are the proper forum to decide arbitrability unless the parties' agreement explicitly provides that the issue of arbitrability is for the arbitrator. In *AT & T Technologies, Inc. v. Communications Workers of America*, the Court held that "the question of arbitrability ... is undeniably an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." [7]

Alaska state law mirrors federal law and provides that courts are the proper forum to determine whether a dispute is arbitrable. In *State of Alaska v. Public Safety Employees Ass'n*, we adopted the federal rule that "arbitrability is a question for the courts '[u]nless the parties clearly and unmistakably provide otherwise.' " [8]

Because the arbitration clause in the agreement between Lexington and Goldbelt Eagle is silent on the proper forum to decide arbitrability, it does not "clearly and unmistakably" rebut the presumption that the courts decide whether a dispute is arbitrable under the terms of the agreement. The superior court thus correctly determined that it had jurisdiction to decide whether the dispute should be referred to an arbitrator.

## C. The Superior Court Erred When It Adjudicated the Validity of the Underlying Contract.

■ After determining that it had jurisdiction to decide arbitrability, the superior court ruled that the marketing agreement became impossible to perform when Gnugnoli began employment with CP Leasing because performance would require Gnugnoli to breach a fiduciary duty to CP Leasing. Reasoning that an agreement to breach a fiduciary duty would be unenforceable on public policy grounds, the court concluded that it would be improper to enforce the arbitration clause of an unenforceable agreement and granted summary judgment to Goldbelt Eagle. Lexington argues that the superior court erred when it addressed the validity of the underlying contract. Because federal and state arbitration law do not allow courts deciding arbitrability to adjudicate the validity of the underlying contract, we agree.[9]

### 1. Federal law does not permit a court deciding arbitrability to adjudicate the enforceability of the underlying contract.

The United States Supreme Court has emphasized that the Federal Arbitration Act (FAA) reflects "a liberal federal policy favoring arbitration agreements" and has directed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." [10] This policy favoring arbi-

---

**6.** *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

**7.** *Id.; see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ("The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' " (citing *AT & T Techs., Inc.*, 475 U.S. at 649, 106 S.Ct. 1415)); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (holding that "[i]f ... the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question ... independently").

**8.** 798 P.2d 1281, 1285 (Alaska 1990) (quoting *AT & T Techs., Inc.*, 475 U.S. at 649, 106 S.Ct. 1415).

**9.** The superior court did not make a finding as to whether the Federal Arbitration Act (FAA) applied to the dispute, but it relied on both federal and state authorities in reaching its conclusions. Because we hold that both federal and state laws require arbitration, we need not resolve the issue of which law binds the parties.

**10.** *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

tration, coupled with the statutory language, has led the United States Supreme Court to interpret the FAA to forbid courts determining arbitrability from adjudicating the validity of the underlying contract.

In *Prima Paint Corp. v. Conklin Manufacturing Co.*, Prima Paint filed suit in federal district court seeking rescission on fraudulent inducement grounds of a contract under which Flood & Conklin agreed to provide consulting services.[11] Flood & Conklin moved to stay the proceedings pending arbitration on the grounds that the consulting contract contained a valid arbitration clause.[12] The case required the United States Supreme Court to interpret 9 U.S.C. § 2, which states that arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract,"[13] and 9 U.S.C. § 4, which the Court noted requires a court to order arbitration once it is satisfied that "the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue."[14] The Court concluded that "in passing upon [an FAA] application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate."[15] Because Prima Paint's fraudulent inducement claims related to the entire contract, rather than merely the arbitration clause itself, the Court concluded that the claims should be adjudicated by arbitrators.[16]

In *Southland Corp. v. Keating,*[17] the Supreme Court fortified the *Prima Paint* holding and clarified that it applies equally to state courts considering arbitrability under the FAA. The Court emphasized:

> We discern only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written contract "evidencing a transaction involving commerce" and such clauses may be revoked upon "grounds as exist at law or in equity for the revocation of any contract."[18]

The Court then concluded that the FAA created a substantive rule in both federal and state courts, foreclosing state legislative "attempts to undercut the enforceability of arbitration agreements."[19]

The United States Supreme Court recently reaffirmed this rule in *Buckeye Check Cashing, Inc. v. Cardegna*, a decision issued after the superior court's ruling in the case now before us.[20] In *Buckeye*, John Cardegna brought a class action in state court against Buckeye Check Cashing, alleging that Buckeye charged usurious interest rates in violation of state laws.[21] In response, Buckeye moved to compel arbitration on the ground that the loan agreements contained an arbitration clause providing that "[a]ny claim, dispute, or controversy . . . arising from or relating to this Agreement . . . or the validity, enforceability, or scope of this Arbitration Provision or the entire Agreement . . . shall be resolved . . . by binding arbitration."[22] The Florida Supreme Court upheld a denial of a motion to compel arbitration on the grounds that (1) the underlying contract was illegal, and (2) an arbitration clause in an illegal contract could not be enforced.[23] The United States Supreme Court reversed.

---

11. 388 U.S. 395, 398–99, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

12. *Id.* at 399, 87 S.Ct. 1801.

13. *Id.* at 400, 87 S.Ct. 1801.

14. *Id.* at 403, 87 S.Ct. 1801.

15. *Id.* at 404, 87 S.Ct. 1801.

16. *Id.* at 406–07, 87 S.Ct. 1801.

17. 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

18. *Id.* at 10–11, 104 S.Ct. 852 (internal citation omitted).

19. *Id.* at 16, 104 S.Ct. 852.

20. 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). The superior court's decision in this case was dated November 8, 2005. *Buckeye* was decided on February 21, 2006.

21. *Id.* at 1207.

22. *Id.*

23. *Id.*

The Supreme Court rejected the Florida court's conclusion that enforceability of the arbitration clause could turn on application of state public policy to the underlying contract[24] and held that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."[25] The Court emphasized that under federal law, the arbitration agreement is to be considered separately from the remainder of the contract in determining arbitrability.[26] The *Buckeye* decision makes it clear that courts may consider challenges of illegality to arbitration agreements but not to the underlying contracts.[27]

Goldbelt Eagle attempts to distinguish *Buckeye* by arguing that the arbitration clause in *Buckeye* was more exhaustive than the clause at issue in this case. Although Goldbelt Eagle is correct that this arbitration agreement is drafted differently from the clause at issue in *Buckeye*, the Supreme Court's holding in *Buckeye* was broad. It was not predicated on a close reading of the agreement at issue in that case; the Court did not parse the language of the agreement, nor did it refer back to the language of the clause after initially quoting it. Instead, the Court relied on several broad principles: (1) "an arbitration provision is severable from the remainder of the contract"; (2) "the issue of the contract's validity is considered by the arbitrator in the first instance"; and (3) "this arbitration law applies in state as well as federal courts."[28] Thus, regardless of whether the arbitration agreement at issue is identical to the agreement before the Court in *Buckeye*, the Court's holding applies.

*Buckeye* does not change the basic rule that courts determining arbitrability must interpret the agreement and determine whether it governs the dispute at issue. However, where the parties have agreed to submit a dispute to arbitration, federal law does not permit a court to refuse to compel arbitration based on a holding that the entire contract is void for public policy.[29]

### 2. State arbitration law does not permit a court deciding arbitrability to adjudicate the enforceability of the underlying contract.

Lexington also argues that the superior court erred under state law when it declared the underlying contract void. We agree. Based on both the statutory language and the policy behind Alaska's Arbitration Act, we hold that state arbitration law aligns with federal law and does not permit a court determining arbitrability to consider the validity of the underlying agreement.

The language of the state statute supports our holding that state arbitration law does not permit adjudication on the merits of the underlying agreement. The text of AS 09.43.010(a), which mirrors FAA § 2, suggests that a court may only resolve public policy challenges when such claims are directed at the arbitration clause itself. *Buckeye*[30] and *Prima Paint*[31] have interpreted the analogous federal provision to require a court to enforce the arbitration clause unless a party asserts standard contract defenses, such as fraudulent inducement or void for

---

**24.** *Id.* at 1209.

**25.** *Id.* at 1210.

**26.** *Id.* at 1209.

**27.** Lexington interprets this severability to limit the court's inquiry into *only* whether there is fraud, duress, or unconscionability in the arbitration clause. But in every case, the court must interpret the arbitration clause to determine whether it extends to the dispute at issue. As part of this determination, the court may only consider fraud allegations relating to the arbitration agreement itself.

**28.** *Id.* at 1209 (extracting general rules from *Prima Paint* and *Southland Corp.*)

**29.** It is not the case that the appellee is without recourse if the underlying contract is void. Federal law simply dictates that such a determination is for the arbitrator—not the court. The superior court quoted the Wyoming Supreme Court and reasoned that to refer the case to "an arbitrator only to have him 'determine that the contract by which he is vested with this authority is void'" was illogical. *See Fox v. Tanner*, 101 P.3d 939, 949 (Wyo.2004). But the United States Supreme Court subsequently addressed this question, deciding in *Buckeye* that the FAA requires such a referral.

**30.** 126 S.Ct. at 1209.

**31.** 388 U.S. at 404, 87 S.Ct. 1801.

public policy, against the arbitration clause itself. Alaska Statute 09.43.010(a) provides:

> [A] provision in a written contract to submit to arbitration a subsequent controversy between the parties is valid, enforceable, and irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract.[32]

This provision does not provide that the arbitration agreement is not enforceable if grounds exist for revocation of the contract that underlies the agreement. Instead, it dictates that the agreement is not enforceable if "grounds . . . exist . . . for revocation . . . of *a* contract." [33] In other words, under AS 09.43.010, a court may properly adjudicate claims that the arbitration clause itself is void, but not claims that the entire contract is void.

Alaska Statute 09.43.020 also indicates that courts deciding arbitrability should not adjudicate the enforceability of the underlying contract. Subsection (a) indicates that courts should address arbitration provisions separately from the underlying contract. The statute mirrors FAA § 4 and states that "if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue and if the agreement is found to exist shall order arbitration." [34] Similarly, under subsection (b) of the statute, "the court may stay an arbitration proceeding commenced or threatened on a showing that there is no *agreement to arbitrate.*" [35] Like FAA § 4, this provision provides for the court to decide issues related to the arbitration agreement itself, but does not provide jurisdiction to decide separate issues relating to the validity of the underlying contract. These provisions support the view that arbitration clauses are severable from the entire contract and thus may be properly enforced even when it is claimed that the underlying contract is void.

Strong public policy rationales support this position. Like federal law, state law strongly favors arbitrability. We have previously recognized the "strong public policy in favor of arbitration." [36] Given this policy, we have indicated that "we . . . allow ambiguous contract terms to be construed in favor of arbitrability where such construction is not obviously contrary to the parties' intent." [37] Forbidding courts from examining the merits of a dispute or the validity of the underlying contract furthers the primary benefit of arbitration—expeditious and inexpensive dispute resolution for the parties.[38] This policy would be frustrated if parties could avoid arbitration by challenging the validity of the underlying agreement.

Although the superior court noted the state's strong presumption in favor of arbi-

---

**32.** *Compare* 9 U.S.C. § 2:

> A written provision in any maritime transaction or a *contract* evidencing a transaction involving commerce *to settle by arbitration a controversy thereafter arising out of such contract* or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*
> (Emphasis added.)

**33.** AS 09.43.010(a) (emphasis added); *cf.* 9 U.S.C. § 2 (using the similar phrase, "revocation of *any* contract") (emphasis added).

**34.** *Compare* 9 U.S.C. § 4:

> The court shall hear the parties, and *upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue,* the court *shall make an order*

*directing the parties to proceed to arbitration* in accordance with the terms of the agreement. (Emphasis added.)

**35.** AS 09.43.020(b) (emphasis added).

**36.** *Univ. of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132, 1138 (Alaska 1974).

**37.** *Id.; see also Ahtna*, 894 P.2d at 662 n. 7 (" 'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute. Doubts should be resolved in favor of coverage.' " (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960))).

**38.** *See, e.g., Prima Paint Corp.*, 388 U.S. at 404, 87 S.Ct. 1801 (recognizing "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts").

trability, it reasoned that it would be illogical to refer the case to an arbitrator simply so that the arbitrator could decide "that he or she lacked the power (or jurisdiction) to arbitrate." However, arbitrability is a matter of contract, and there is no reason to assume that submitting the validity of the underlying contract to the arbitrator is not appropriate where the parties so intended.[39]

The superior court relied on our decision in *Willis Flooring, Inc. v. Howard S. Lease Construction Co. & Associates.*[40] In *Willis*, we held that an arbitration provision was not unenforceable for lack of mutuality where arbitration was the sole option of one party.[41] Our holding was premised upon the notion that an arbitration clause does not require separate consideration so long as the underlying contract is supported by consideration because the contract and arbitration clause constitute a "unitary, integrated contract, not a series of independent agreements."[42] But this notion is consistent with the *Prima Paint* and *Buckeye* rule that courts deciding arbitrability are not to adjudicate the validity of the underlying agreement. As several courts have reasoned, interpreting *Prima Paint* to require separate consideration for an arbitration clause runs contrary to the strong federal policy in favor of arbitration.[43] Our holding in *Willis* is therefore consistent with federal law and with our ruling today.

Alaska's arbitration law closely follows federal arbitration law,[44] and federal law has clarified that arbitration clauses are severable from the underlying contracts for purposes of challenges to the validity of the underlying agreement. Determinations as to the validity of the underlying contract are a matter for the arbitrator to decide. We therefore hold that state arbitration law, like federal law, did not permit the superior court's finding that the underlying contract was unenforceable.

### 3. The dispute fell under the terms of the arbitration agreement.

▆▆▆ Our conclusion that the superior court erred under federal and state arbitration laws when it declared the underlying contract void does not end the matter. Because arbitration is a matter of contract, parties can only be compelled to arbitrate a matter where they have agreed to do so.[45] Thus, we are required to decide whether the arbitration clause covers this dispute. Goldbelt Eagle argues the superior court correctly concluded that the dispute did not arise under the agreement and was therefore not arbitrable under the terms of the arbitration clause. We disagree. Although Goldbelt Eagle is correct that arbitration is a matter of contract and a particular dispute is not arbitrable unless the parties have agreed to arbitrate it, we hold that this dispute falls easily within the terms of the arbitration clause.

Although the superior court concluded that the dispute did not arise under the contract, its ruling was predicated on its finding that the contract was void for public policy reasons. The superior court reasoned that

---

39. During oral argument, Goldbelt Eagle suggested that the superior court's ruling that the contract was void for public policy could be binding on the arbitrator even if we reverse. But because we hold that the superior court did not have jurisdiction to rule on the merits of the underlying contract, the ruling has no preclusive effect, and the court's vacated determination is not binding. *See* 18A CHARLES ALAN WRIGHT & ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4432 (2d ed. 2002) ("There is no preclusion as to the matters vacated or reversed.... [I]f the appellate court requires dismissal of the case for want of jurisdiction in the trial court, preclusion cannot be revived by attempting to show that the trial led to an otherwise proper determination on the merits.") (internal citations omitted).

40. 656 P.2d 1184 (Alaska 1983).

41. *Id.* at 1184–85.

42. *Id.* at 1185.

43. *See, e.g., Glazer v. Lehman Bros., Inc.,* 394 F.3d 444, 453–54 (6th Cir.2005); *see also Doctor's Assocs., Inc. v. Distajo,* 66 F.3d 438, 452–53 (2d Cir.1995).

44. *See, e.g., Ahtna,* 894 P.2d at 662 n. 7 (citing with approval the approach of the United States Supreme Court in arbitration law).

45. *AT & T Techs.,* 475 U.S. at 648, 106 S.Ct. 1415 ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal citations and quotations omitted).

*"[s]ince the agreement for marketing services for commission was unenforceable following Gnugnoli's CP Leasing employ,* no claims could 'arise' under the agreement thereafter." (Emphasis added.) The court concluded that no disputes could arise under a void contract. As explained above, this conclusion is precluded under both federal and state law, which forbid courts from determining arbitrability based on the validity of the underlying contract.

Lexington contends that its claim "arise[s] directly under the contract and fall[s] within the disputes that are subject to the arbitration provisions." Goldbelt Eagle argues that the arbitration clause at issue is narrow and did not extend to the dispute at issue. Goldbelt Eagle suggests that the agreement is narrow because it extends only to all disputes "arising under" and does not include disputes as "to the validity of the agreement" or "related to" or "in connection with the agreement." But Goldbelt Eagle cites no Alaska or federal cases declaring that clauses that require arbitration of "all disputes or claims arising under the agreement" must be narrowly read. And several federal courts have declared that clauses referring to arbitration disputes "arising under" or "arising hereunder" are broad.[46]

Moreover, regardless of whether the clause is narrow or broad, as a matter of contract interpretation, the arbitration clause applies to this dispute. Goldbelt Eagle suggests that the superior court properly concluded that the parties are disputing whether the underlying contract was void. It reasons that such a dispute revolves around a collateral matter. But Lexington is seeking payment of a commission for services it contends were provided under the contract. Thus, Lexington's claim for payment arises under the contract: it is seeking payment for ser-

vices it argues were provided under the terms of the agreement. Arbitration of such a claim falls squarely within the arbitration clause's agreement to submit "[a]ll disputes or *claims* arising under this Agreement" to arbitration. (Emphasis added.) In light of our strong policy favoring arbitration and our rule of construction allowing even ambiguous contract terms to be construed in favor of arbitrability,[47] this dispute would be arbitrable even if the contract term was ambiguous. Here, the contract term is not ambiguous, and arbitration is consistent with the parties' intent to arbitrate claims "arising under" the agreement. We therefore hold that Lexington's claim falls within the scope of the arbitration clause. Because we hold that the superior court erred in declining to order arbitration based on its finding that the underlying contract was void, we do not address Lexington's argument that the court erred in granting summary judgment because parol evidence was in conflict.

## IV. CONCLUSION

In this case, decided before *Buckeye,* the superior court declined to refer the case to arbitration based on its finding that the underlying contract was void as a matter of public policy. Under *Buckeye,* such determinations are for the arbitrator to make. We REVERSE and REMAND for proceedings consistent with this opinion.

EASTAUGH, Justice, not participating.

---

**46.** *See, e.g., Battaglia v. McKendry,* 233 F.3d 720, 723–25 (3rd Cir.2000) (holding that clause providing for arbitration of "any controversy [that] arises hereunder" was sufficiently broad to encompass counterclaim that agreement was void since inception); *Gregory v. Electro–Mechanical Corp.,* 83 F.3d 382 (11th Cir.1996) (holding that clauses providing for arbitration of disputes "arising under" a contract are broad and refusing to distinguish between "arising under" and "arising out of"); *Building Materials & Constr.*

*Teamsters Local No. 216 v. Granite Rock Co.,* 851 F.2d 1190, 1194 (9th Cir.1988) ("By providing that '[a]ll disputes arising under this agreement' shall be resolved through arbitration, the parties agreed 'to submit *all* grievances to arbitration, not merely those which the court will deem meritorious.' ") (internal citations and quotations omitted).

**47.** *Modern Constr.,* 522 P.2d at 1138.