OK LUMBER COMPANY,
INC., Appellant,

v.

ALASKA RAILROAD CORPORATION,
Appellee.

No. S–11430.

Supreme Court of Alaska.

Nov. 25, 2005.

Joseph W. Sheehan, Law Offices of Joseph W. Sheehan, Fairbanks, for Appellant.

James D. DeWitt and Jonathan A. Woodman, Guess & Rudd P.C., Fairbanks, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

OK Lumber Company appeals the superior court's affirmance of an arbitration decision that established the fair market value of land the Alaska Railroad Corporation leased to OK Lumber. Per the lease, fair market value affects the annual rent. OK Lumber argues that the arbitrator exceeded his authority when he interpreted the lease to exclude consideration of environmental contamination in determining the property's fair market value. OK Lumber also contends that the superior court erred when it awarded attorney's fees to the railroad.

The lease states that a "matter of disagreement" shall be submitted to the arbitrator. We therefore conclude that the arbitrator did not exceed his authority and affirm the superior court's decision upholding the arbitrator's decision regarding calculation of fair market value. We also affirm the attorney's fee award because we conclude that a lease provision requiring OK Lumber to reimburse the railroad's costs applies to this dispute.

## II. FACTS AND PROCEEDINGS

OK Lumber Company leases land from the Alaska Railroad Corporation. For the first five years of the lease, the rent was set at an agreed-upon amount. Beginning in the sixth year (2002), rent was to be eight percent of the property's fair market value, determined every five years through an appraisal process outlined in the lease. This process was to begin when the railroad commissioned an appraisal. If OK Lumber disagreed with the railroad's appraisal, it could arrange for its own. Finally, OK Lumber could refer the matter to an arbitrator if the parties could not reach agreement after the two appraisals.

In late 2001 a railroad appraisal valued the property at $876,864. OK Lumber objected to this appraisal in part because it excluded environmental considerations; the parties agree that the property is contaminated by hydrocarbons. OK Lumber commissioned its own appraisal, instructing the appraiser to exclude the contamination issue, but to investigate the impact of the stigma from contamination on the property's fair market value. OK Lumber's appraiser concluded that the property was worth $730,000 and that contamination stigma would reduce the value "probably somewhere [in] the 10% to 20% range." That adjustment would reduce the fair market value to some amount between $584,000 and $657,000.

The matter proceeded to arbitration. The arbitrator decided that it was not "appropriate to consider the impact of the contamination" because he believed that the railroad's "Standard Appraisal Instructions[ ] instruct[ed] the appraiser to ignore the impact of contamination." The arbitrator found ad-

ditional support for his decision in "the fact that the lease itself does contain indemnification for the impact of contamination." He concluded that the property's fair market value was $812,000. If the impact of the contamination were considered, the arbitrator calculated that it would have reduced the fair market value to $732,000.

Arguing that the arbitrator had exceeded his authority, OK Lumber asked the superior court to vacate or modify the arbitration award. The superior court denied the application, concluding that the arbitrator did not exceed his authority and that the court had no power to review contract interpretations or factual findings. The superior court therefore affirmed the arbitrator's decision. It also awarded the railroad full attorney's fees totaling $8,462. OK Lumber appeals.

## III. DISCUSSION

### A. Standard of Review

■■■■ Whether a dispute was arbitrable and whether the arbitral decision violated AS 09.43.120(a) are questions of law.[1] We therefore review de novo the superior court's decision on these issues.[2] But "[t]he arbitrator's findings of both fact and law ... receive great deference."[3] When an "arbitration proceeds under the terms of Alaska's Uniform Arbitration Act,[4] the arbitrator's findings of fact are unreviewable, even in the case of gross error."[5] Also, "an arbitrator's misconstruction of a contract is not open to judicial review, except on questions of arbitrability."[6] The superior court's interpretation of the contract is a question of law that we review de novo.[7] We therefore review

the dispute over the lease's attorney's fees provision de novo.

### B. The Arbitrator Did Not Exceed His Authority.

■■■ The lease authorizes arbitration when the parties fail to agree on the fair market value of the property. It also provides that "[t]he decision of the arbitrator or arbitrators shall be final and unreviewable by any court, except to the extent authorized by Alaska Statutes 09.43.110, .120 and .130."

OK Lumber argues that the arbitration decision should be modified because the arbitrator exceeded his authority. It relies on AS 09.43.120(a), which states in part that "the court shall vacate an award if ... (3) the arbitrators exceeded their powers."[8] OK Lumber asserts that the arbitrator's authority was limited to determining value and did not encompass interpreting the contract. It reasons that paragraph 2.02A of the lease specified only two exclusions (the value of the lease itself and of the improvements owned by OK Lumber) in determining fair market value and that the arbitrator impermissibly added a third exclusion by deciding not to consider the effect of contamination.

Paragraph 8.01 of the lease provides that if the railroad and OK Lumber "fail to agree" on the fair market value of the property, "the *matter of disagreement* ... shall be submitted to and determined by a single arbitrator." (Emphasis added.) This language does not necessarily limit the arbitrator's authority to resolving narrow questions about the value of the property. The record demonstrates that there was a dispute about whether contamination should be considered in determining fair market value. This dis-

---

1. *Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 660 (Alaska 1995).

2. *Id.* (citing *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

3. *Id.* (emphasis omitted).

4. AS 09.43.010 et seq. The Alaska Revised Uniform Arbitration Act took effect on January 1, 2005 and governs arbitration agreements entered into after that date. AS 09.43.300(a).

5. *Ahtna*, 894 P.2d at 660–61 (citing *Breeze v. Sims*, 778 P.2d 215, 217 (Alaska 1989)).

6. *Id.* at 661 (quoting *Alaska State Hous. Auth. v. Riley Pleas, Inc.*, 586 P.2d 1244, 1247 (Alaska 1978)).

7. *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 4 (Alaska 2004).

8. *See also Riley Pleas*, 586 P.2d at 1247 ("If the arbitrators have decided an issue which is not arbitrable under the contract to arbitrate, they have exceeded their powers.").

pute was therefore a "matter of disagreement" that was, per paragraph 8.01 of the lease, within the arbitrator's authority to determine. To resolve this dispute, the arbitrator had to interpret the contract and decide whether contamination can be considered in determining fair market value.[9]

Because there is no lack of arbitrability here, we will not review the arbitrator's decision to exclude contamination issues from the fair market value determination.[10] Nor will we address the many arguments OK Lumber advances in challenging the arbitrator's decision.[11]

There is some discussion in the superior court's decision and in OK Lumber's brief about whether the arbitrator had access to the railroad's standard appraisal instructions. There is also discussion about whether the arbitrator may have committed a gross factual error by relying on the testimony of the railroad's appraiser to conclude that the standard appraisal instructions excluded contamination. But these questions are also unreviewable: "the arbitrator's findings of fact are unreviewable, even in the case of gross error."[12]

Because we affirm the superior court decision upholding the arbitrator's decision, there is no need to consider the railroad's waiver and estoppel arguments.

### C. Attorney's Fees

■ OK Lumber also argues that because the lease "requires each part[y] to bear its own attorney's fees," the superior court erred by awarding attorney's fees to the railroad. OK Lumber refers us to lease paragraph 8.01, which discusses the appointment of arbitrators and the conduct of arbitration. It provides in part that "[l]essor and [l]essee shall share equally the costs associated with the arbitration." Paragraph 8.03 addresses judicial review of an arbitration decision, but is conspicuously silent about costs, and says nothing about attorney's fees. We considered a similar situation in *Marathon Oil Co. v. ARCO Alaska, Inc.*:

> Marathon contends that the arbitration agreement required the parties to bear their own costs and fees, even for court proceedings following the arbitration....
>
> ... The contract's language cuts against Marathon's interpretation.... [T]he requirement that each party bear its own costs and fees appears in a paragraph that also discusses how the arbitrators will be compensated. The location of the requirement within the contract therefore suggests that the parties were referring only to the arbitration itself when they agreed to each bear their own costs.[13]

In the present case, the cost-sharing language of paragraph 8.01 appears in the same paragraph as the description of the procedures for appointing arbitrators; it is separate from paragraph 8.03's discussion of judicial review. It therefore appears that OK Lumber and the railroad agreed that they

**9.** *Cf. State Farm Mut. Auto. Ins. Co. v. Dowdy,* 111 P.3d 337, 342 (Alaska 2005) ("[C]overage matters not committed to arbitration by the terms of the policy should nevertheless be arbitrated where they are inextricably intertwined with matters committed by contract to arbitration.").

**10.** "This court has no statutory authority to reconsider arbitrators' construction of contract provisions that do not pertain to the issue of arbitrability." *Marathon Oil Co. v. ARCO Alaska, Inc.,* 972 P.2d 595, 603 (Alaska 1999); *see also Ahtna,* 894 P.2d at 661 (" '[A]n arbitrator's misconstruction of a contract is not open to judicial review, except on questions of arbitrability ....' ") (quoting *Riley Pleas,* 586 P.2d at 1247).

**11.** OK Lumber argues that the lease was an integrated contract that could not be unilaterally modified, that the parties did not intend to ex-

clude consideration of contamination from the determination of fair market value, and that the standard appraisal instructions do not exclude contamination. OK Lumber also contends that the lease would be unenforceable due to indefiniteness and lack of mutual assent if the railroad could unilaterally change what is excluded from the fair market value determination through the standard appraisal instructions. Finally, OK Lumber argues that the lease is a contract of adhesion and that any ambiguities should therefore be decided in OK Lumber's favor.

Because none of these contentions pertains to arbitrability, we do not address them.

**12.** *Ahtna,* 894 P.2d at 661 (citing *Breeze v. Sims,* 778 P.2d 215, 217 (Alaska 1989)).

**13.** *Marathon Oil Co. v. ARCO Alaska, Inc.,* 972 P.2d 595, 604 (Alaska 1999).

would share costs incurred during arbitration, but not those incurred during judicial review of an arbitration decision. It is unlikely the parties intended "costs" as so used to include individually incurred attorney's fees, otherwise the party whose attorney charged lower fees would have to make up half the difference between its fees and the fees charged by the opposing attorney.[14]

■ OK Lumber also argues that even if the railroad is entitled to recover some fees, it was not entitled to a *full* fee award. Paragraph 4.13 of the lease provides in part:

> Lessee shall forthwith pay to Lessor *all* costs and expenses, including reasonable attorney's fees, which are ... (4) incurred by Lessor in connection with *any action* in any respect related to this Lease, the Leased Premises, or Lessee's actions or omissions on the Leased Premises, other than a condemnation action filed by or against Lessee, to and in which Lessor is made a party but not adjudicated to be at fault.

(Emphasis added.)

OK Lumber asserts that paragraph 4.13 does not apply to arbitration or arbitration appeals and that Alaska Civil Rule 82 should govern if the railroad is entitled to any attorney's fees. Civil Rule 82 provides that "[e]xcept as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule."[15] It also provides that "[i]n cases in which the prevailing party recovers no money judgment, the court ... shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred."[16] Thus, the railroad would be entitled to its full, reasonable fees if paragraph 4.13 applies, but only twenty percent of its fees if it does not.

OK Lumber reasons that paragraph 4.13 does not apply here because it asserts that

Article 4's focus is on OK's lease obligations and OK's obligation to pay [the railroad's] attorney's fees in conjunction with OK's covenants.... Article 4 makes no reference to fair market disputes, arbitrations, or appeals associated with rent arbitrations.... [Paragraph] 4.13 makes sense only in reference to the enforcement of Article 4.

Although paragraph 4.13 is located within the article that lists OK Lumber's covenants, OK Lumber's obligation to reimburse the railroad for its costs in certain situations appears to be a covenant itself and is not linked to the enforcement of the other covenants. The parties agreed in paragraph 4.13 that OK Lumber would be responsible for the railroad's costs, including attorney's fees, incurred "in connection with any action in any respect related to [the][l]ease." We conclude that, contrary to OK Lumber's view, a superior court proceeding brought to review an arbitrator's decision is an "action." The superior court therefore did not err in awarding full attorney's fees to the railroad.

■ OK Lumber asserts that applying paragraph 4.13 to the appeal of an arbitration award is contrary to public policy, unconscionable, and the product of a contract of adhesion. OK Lumber points out that the railroad could be entitled to a comprehensive fee award even if it were not the prevailing party. This result, OK Lumber contends, would be contrary to public policy. And because OK Lumber could not recover its costs even if it prevailed, it claims that paragraph 4.13, as interpreted by the railroad, would be unconscionable. Finally, it argues that the lease is a contract of adhesion because the railroad "had the bargaining clout" to insert any term it wanted into the lease.

These contentions are unavailing. The question whether it would contravene public policy to award fees to a non-prevailing party is not before us. Fees were awarded here to the prevailing party.

---

**14.** Likewise, other provisions in the contract discussing recovery of expenses mention attorney's fees specifically. Paragraph 4.13, for example, refers to "all costs and expenses, including reasonable attorney's fees." These explicit references suggest that the parties did not intend

attorney's fees to be recoverable unless the contract specifically provided otherwise.

**15.** Alaska R. Civ. P. 82(a).

**16.** Alaska R. Civ. P. 82(b)(2).

Moreover, although paragraph 4.13 is more favorable to the railroad, we are not persuaded that the superior court erred in failing to find the provision unconscionable.[17] Per paragraph 4.13, when the railroad is "adjudicated to be at fault," OK Lumber is not required to reimburse the railroad. Therefore, OK Lumber would not be responsible for the railroad's costs in many, if not all, of the disputes in which OK Lumber might have prevailed. Furthermore, because the lease is silent regarding OK Lumber's ability to seek an award of costs when it is the prevailing party, nothing appears to preclude OK Lumber from receiving a partial award under Civil Rule 82 when it is the prevailing party.

Finally, OK Lumber has not demonstrated that the lease is a contract of adhesion. Adhesion contracts arise when "the parties are 'of such disproportionate bargaining power that [one of them] could not have negotiated for variations in the terms of the standard [contract].'"[18] The railroad argues that there is no evidence the lease is a contract of adhesion. It points to several contracting "concessions," describing them as "indemnification of OK Lumber for prior contamination," "caps on rent increases in years 6–10 and thereafter for the lease term," "the power to assign the [l]essee's interest under the [l]ease and the right to be released from further obligations upon such an assignment," and "the right to use the leased premises as collateral." The railroad therefore contends that "OK Lumber was able to negotiate effectively to obtain [the] concessions it wanted in the [l]ease." These arguments are persuasive. We conclude that the superior court did not err in failing to find that the lease was a contract of adhesion.

We are not convinced that the superior court erred in granting the railroad's request for full attorney's fees despite OK Lumber's arguments that the lease was contrary to public policy, unconscionable, and a contract of adhesion.

## IV. CONCLUSION

For these reasons, we AFFIRM the superior court decision upholding the arbitration and the order awarding full attorney's fees to the railroad.

---

**17.** We have stated that "[u]nconscionability may exist where [the] circumstances indicate a vast disparity of bargaining power coupled with terms unreasonably favorable to the stronger party." *Municipality of Anchorage v. Locker*, 723 P.2d 1261, 1265–66 (Alaska 1986) (citing *Vockner v. Erickson*, 712 P.2d 379, 381–83 (Alaska 1986)); *see also Morrow v. New Moon Homes*, 548 P.2d 279, 292 n. 43 (Alaska 1976) (quoting with approval the following definition of unconscionability from *Williams v. Walker–Thomas Furniture*, 350 F.2d 445, 449 (D.C.Cir.1965): "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.").

**18.** *Little Susitna Constr. Co. v. Soil Processing, Inc.*, 944 P.2d 20, 25 n. 7 (Alaska 1997) (quoting *Graham v. Rockman*, 504 P.2d 1351, 1357 (Alaska 1972)).