*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TROY JOHNSON, | ) | |
| | ) | Supreme Court No. S-14632 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-09709 CI |
| v. | ) | |
| | ) | O P I N I O N |
| THE ALEUT CORPORATION, | ) | |
| | ) | No. 6813 – August 23, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Molly C. Brown and Michael D. White, Patton Boggs LLP, Anchorage, for Appellant. William J. Evans, Sedor, Wendlandt, Evans & Filippi, LLC, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.
STOWERS, Justice, dissenting.

I.      INTRODUCTION

The Aleut Corporation terminated the employment of its chief executive officer, Troy Johnson. Johnson challenged the termination, and the matter was submitted to binding arbitration as required by the employment contract, which contained a broad arbitration clause providing that "[a]ny and all disputes . . . arising out of, relating in any

way to or in connection with this Agreement and/or Executive's employment with or termination of employment from the Company . . . shall be solely settled by an arbitration." At arbitration, the parties disputed whether The Aleut Corporation had violated the employment contract by terminating Johnson and whether Johnson's alleged breach of contract justified the termination. After determining that The Aleut Corporation had breached the employment contract, the arbitrator awarded damages to Johnson.

The Aleut Corporation petitioned the superior court to vacate the arbitrator's decision, claiming that the arbitrator had addressed an issue that was never submitted to arbitration and was thus not arbitrable. The superior court vacated the arbitration award, concluding that the arbitrator had exceeded his authority, and Johnson appeals. Because the dispute was arbitrable, we conclude that the arbitrator did not exceed his authority, and we therefore reverse the superior court's decision to vacate the arbitration award.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

The Aleut Corporation is one of the 13 regional Native corporations established in 1972 under the Alaska Native Claims Settlement Act.[1] Troy Johnson is an Aleut Corporation shareholder and a business executive. In 2007 The Aleut Corporation hired Johnson as its new chief executive officer (CEO), and the two parties negotiated an agreement setting forth the terms of Johnson's employment.

Paragraph 5 of the employment agreement established that Johnson's "Initial Term" as CEO would last three years, ending on March 31, 2010. Paragraph 5 also provided for a two-year "automatic extension" of Johnson's term, at The Aleut

---

[1]     *See* 43 U.S.C. § 1606 (2007).

Corporation's option. To trigger this option term, Paragraph 5 required Johnson to provide a reminder notice to The Aleut Corporation's Board of its ability to cancel the option term. This notice was to be sent to the Board Chair at least 120 days before March 31, 2010. Upon receiving this reminder notice, The Aleut Corporation was to have the option to cancel the automatic extension of the term by written notice to Johnson at least 90 days before March 31, 2010. Paragraph 5 of the employment agreement provided:

> Term. Subject to the provisions for earlier termination set forth in Paragraph 9, the term of the Executive's employment hereunder shall commence on the Effective Date and terminate (3) years thereafter on March 31, 2010 (the "Initial Term"). Company shall have an option, exercisable in writing on or before ninety (90) days prior to the expiration of the Initial Term, to cancel the *automatic extension* of the term of this Agreement for an additional two (2) year period commencing on April 1, 2010, terminating on March 31, 2012 (the "Option Term"). Executive shall notify the Chair of the Board, in writing, 120 days before the expiration of the Initial Term of the Company's option to cancel, but if he fails to so notify the Chair of the Board, this Agreement will expire at the end of the Initial Term. The Initial Term and the Option Term, if not cancelled by the Company, are herein called the "Term." Neither the Company nor Executive will have any obligation to renew or extend this Agreement beyond the Term.

(Emphasis in original.) The employment agreement also contained a broadly drafted arbitration clause: "Any and all disputes between Executive and the Company, however significant, arising out of, relating in any way to or in connection with this Agreement and/or Executive's employment with or termination of employment from the Company . . . shall be solely settled by an arbitration . . . ."

Johnson testified that when he negotiated the employment agreement, he sought a longer initial term because he "wanted that security of a five-year contract" for his family. He further explained that "having been through the work of changing a company . . . three years is a pretty short period of time." Johnson and The Aleut Corporation agreed that the purpose of the reminder notice provision was to ensure that the Board would not overlook the option term and inadvertently allow Johnson's contract to extend.

In July 2009, as the end of Johnson's initial three-year term approached, Johnson and The Aleut Corporation began negotiations for a new contract. On July 22, 2009, Johnson drafted a letter to Sharon Lind, the chair of The Aleut Corporation Board of Directors, providing the required notice of The Aleut Corporation's option to cancel the automatic extension of the term. Johnson created a fax cover sheet for the letter and attempted to fax the letter to Lind's office. But a subsequent review of electronic records from the fax machine at Lind's office indicated that Lind's machine never received Johnson's fax. Johnson also claimed that he later gave Lind a hard copy of the letter with a packet of other documents.

The contract negotiations that followed led Johnson to believe that Lind had received his reminder notice letter. In August 2009, Johnson watched The Aleut Corporation's attorney, Thomas M. Daniel, give a presentation to the full Board on the status of their negotiations. During the presentation, Daniel provided charts describing the terms of Johnson's current contract and contract proposals. The "term" section of the chart stated that Johnson's contract "automatically extended for 2 more years unless [The Aleut Corporation] gives notice of cancellation 90 days before expiration." The chart did not mention Johnson's obligation to provide notice. Johnson later testified that because Daniel's chart did not mention the requirement for him to provide the reminder

notice, he assumed that Lind had received his letter reminding The Aleut Corporation of its option to cancel the automatic extension of the term.

Under Paragraph 5, notice from Johnson would have triggered The Aleut Corporation's responsibility to notify Johnson before December 31, 2009 if the company decided to cancel the automatic extension. The Aleut Corporation did not provide notice to Johnson of its decision to cancel the automatic extension of his term by that date.

Throughout the contract renewal negotiations, Board Chair Lind sent inquiries to Daniel, The Aleut Corporation's attorney, regarding the employment agreement. Early in the negotiations, Lind asked Daniel a question about the automatic extension provision in Johnson's contract. Daniel confirmed that according to the provision, Johnson's contract would "automatically renew" for an additional two years "*unless the board affirmatively cancels the extension at least 90 days before the current contract expires*." (Emphasis in original.) Later, in February 2010, Daniel replied to an additional question from Lind, remarking that the "notice provisions" in the employment agreement were "mostly meaningless — the result of last minute changes that were made when we negotiated the contract." Meanwhile, the contract negotiations between The Aleut Corporation and Johnson continued into March 2010 without success.

On March 21, 2010, The Aleut Corporation's Board informed Johnson that it would allow Johnson's contract to expire at the end of the month. The following day, Johnson and a member of the Board discussed how Johnson might save his job. Johnson later testified that the Board member's comments led him to believe that he might retain his job if he fired Eric Waterman, The Aleut Corporation's director of operations. After the meeting, Johnson terminated Waterman and signed a severance and release agreement with him.

On March 30, 2010, Johnson's lawyer sent a letter to The Aleut Corporation declaring that The Aleut Corporation had improperly terminated Johnson's

contract because Johnson had faxed the reminder notice to Lind and the Board had not timely cancelled the option. The next day, Johnson completed his last day of employment at The Aleut Corporation. On April 9, 2010, Johnson's attorney sent a second letter to The Aleut Corporation, proposing a settlement and advising that Johnson would proceed to arbitration if the parties could not agree on a settlement.

**B. Arbitration Proceedings**

The arbitration clause of the employment agreement required that "[a]ny and all disputes . . . arising out of, relating in any way to or in connection" with the employment agreement "shall be solely settled by an arbitration" conducted in accordance with the American Arbitration Association rules. Accordingly, Johnson submitted a statement of claims to the American Arbitration Association on October 15, 2010.

Johnson's statement of claims argued that The Aleut Corporation had breached the employment agreement when it terminated his contract. Johnson explained that he had provided timely notice to the Board reminding it of its option to cancel the automatic extension and that the Board had failed to provide timely notice that it was cancelling the automatic extension. Johnson's statement of claims concluded with a request that "the arbitrator find the Company failed to timely exercise its option to terminate the automatic two-year extension of Mr. Johnson's Contract beyond March 31, 2010," and "that the Company['s] termination of Mr. Johnson's employment as CEO effective March 31, 2010, constituted a breach by the Company of the Contract."

The Aleut Corporation responded that Johnson had not in fact provided the required reminder notice and thus the employment agreement had expired on March 31, 2010. The Aleut Corporation also claimed, as an "[a]ffirmative [d]efense," that Johnson had breached the employment agreement by terminating Waterman and obligating The Aleut Corporation to a severance agreement without the proper authority.

The parties submitted a joint statement of uncontested facts to the arbitrator. That statement provided that "Paragraph 5 [of the employment agreement] required Johnson to notify the Chair of [The Aleut Corporation's] Board, Sharon Lind, of [The Aleut Corporation's] option to cancel the 'Option Term' 120 days prior to March 31, 2010, or December 1, 2009." Their statement described the negotiations of Johnson's contract renewal, Johnson's letter to Lind, Daniel's statements concerning the option term, Johnson's firing of Waterman, and The Aleut Corporation's termination of Johnson's contract.

On April 12 and 13, 2011, Arbitrator Thomas P. Owens, Jr. conducted the arbitration hearing. The parties disputed whether Johnson's decision to fire Waterman constituted a breach of contract. Johnson argued that The Aleut Corporation's termination of the employment agreement "had no valid basis" and was a "breach of the Contract." He presented evidence that he had provided the requisite reminder notice to trigger the automatic extension of the term. The Aleut Corporation contended that the "issue in the case is whether or not Mr. Johnson's contract automatically extended" and that "at the end of this arbitration hearing there will be no evidence in this case . . . that Ms. Lind received that required notice. . . . And that's the entire case."

The arbitrator heard testimony from Johnson, Board Chair Lind, Daniel, The Aleut Corporation's chief financial officer, and a member of the Board. The testimony covered a variety of topics, including the parties' intent surrounding the initial negotiation of the option term of the employment agreement, Johnson's decision to fire Waterman, Johnson's performance as CEO, the recent contract-renewal negotiations, and the termination of Johnson's contract. In particular, Johnson testified that Daniel had proposed the reminder notice language "so that the board, whoever was in the board at that time, would be aware that . . . you can cancel this automatic two-year extension." Johnson also testified about his performance as CEO, his firing of Waterman, the 2009

contract negotiations, and his attempts to send the notice letter to Lind. Lind reported that she had never received Johnson's notice letter. The arbitrator also heard testimony from Daniel describing both the initial negotiations of the option term in Johnson's employment agreement and the contract renewal negotiations.

In June 2011 Arbitrator Owens issued his decision and award. He summarized Johnson's claim: "Claimant claims that Respondent prematurely ended his employment, in violation of the Contract, and that he is entitled to compensatory damages as a result of the breach." The arbitrator determined that to resolve the parties' dispute, he was required to answer three questions:

> 1. Did the termination of Claimant[] [Johnson's] employment by Respondent [The Aleut Corporation] breach the Contract?
>
> 2. Was the termination of Claimant[] [Johnson's] employment justified by [Johnson's] subsequent breach of the Contract?
>
> 3. What damages, if any, should be awarded in this case?

The arbitrator further explained that "[r]esolution of the issues in this case requires that the arbitrator interpret the Contract," and that in light of Alaska contract law jurisprudence, the primary goal was to "enforce the reasonable expectations of the parties."

The arbitrator made detailed findings about the parties' expectations. He found "Troy Johnson's testimony concerning the negotiation of ¶ 5 of the Contract to be credible and un-contradicted." He further found "that the reasonable expectations of the parties regarding the term" of the employment agreement were:

> (1) the initial term of the Contract would be three years; (2) the initial term would be automatically extended for two additional years unless [The Aleut Corporation] exercised its option to cancel the automatic extension at least ninety days

before the scheduled expiration of the initial term; (3) an extension of the Contract would not accidentally occur on account of [The Aleut Corporation's] lack of information about its right to cancel the automatic extension.

The arbitrator also found that the reminder notice clause was not inserted into the contract "to create an unrelated, arbitrary pre-requisite that could operate to negate the automatic extension, regardless of the state of [The Aleut Corporation's] knowledge about its rights." Rather, "the primary intent and expectation of the parties with regard to the term of the Contract was that the initial three-year term of the Contract would be automatically extended for two years, unless [The Aleut Corporation] notified Johnson by December 31, 2009, that it was cancelling the extension."

The arbitrator found that The Aleut Corporation was independently "well aware" of the existence of the option term during the summer and fall of 2009, as evidenced by Daniel's correspondence with Lind. The arbitrator found that although Lind had never received the fax of Johnson's letter, this issue was of "secondary" importance in light of the conclusion that Johnson's reminder notice was "not a pre-requisite, the non-occurrence of which would excuse [The Aleut Corporation] from the obligation to affirmatively notify Johnson of a cancellation in all circumstances, regardless of the state of its knowledge about its right to cancel." Accordingly, Johnson's failure to provide the reminder notice "did not extinguish [The Aleut Corporation's] obligation to timely notify Johnson of a decision to cancel the automatic extension." Therefore, the arbitrator determined that by terminating Johnson without providing timely notice, The Aleut Corporation had "breached the Contract." The arbitrator concluded that "[t]o find otherwise would exalt form over substance and betray the expectations of the parties to the Contract."

Finally, the arbitrator relied on the employment agreement's definition of "cause" for termination, finding that "the conduct of Johnson with regard to Waterman['s

termination and severance package] did not constitute willful, reckless or grossly negligent misconduct that would justify termination of his employment for cause." Because the arbitrator decided that The Aleut Corporation had breached the contract while Johnson had not breached it, the arbitrator awarded damages to Johnson for lost salary and benefits.

## C. The Superior Court's Decision

Arguing that the arbitrator exceeded his authority, The Aleut Corporation petitioned the superior court to vacate the arbitration award. The superior court vacated the arbitrator's award, concluding that the arbitrator had exceeded his authority by deciding an issue that was not submitted to arbitration and that the award was therefore "procedurally unfair." The superior court reasoned that it was "not reasonably possible that the scope of the arbitration required the arbitrator to interpret the CEO Contract and determine if the Reminder Notice was a condition precedent to the automatic renewal." It further noted that "[t]his finding is emphatically supported by the fact that the arbitrator ruled on an issue in a manner contrary to concessions that both parties had made; namely, the CEO Contract would not renew unless Johnson provided the Reminder Notice." As a result, the superior court awarded partial attorney's fees and costs to The Aleut Corporation.

Johnson moved for reconsideration, but the superior court denied the motion. Johnson now appeals, arguing that the superior court erred when it vacated the arbitration award.

## III.  STANDARD OF REVIEW

A superior court's decision reviewing an arbitration award is subject to de novo review.[2]  "An arbitrator's decision is accorded great deference"[3] because "[b]oth the common law and Alaska statutes evince a strong public policy in favor of arbitration."[4]  To effectuate this public policy, we follow an approach of "minimal court interference with arbitration,"[5] and "[t]his deference extends to both the arbitrator's factual findings and the arbitrator's interpretation and application of the law."[6]  We have remarked that "as a matter of both policy and law, we are 'loath to vacate an award made by an arbitrator,' "[7] and that "we will interfere with the decision of an arbitrator only in the most egregious instances."[8]

"There are no statutory grounds for review of an arbitrator's determination as to the meaning of contract provisions which do not pertain to the issue of

---

[2]  *See Kinn v. Alaska Sales & Serv., Inc.*, 144 P.3d 474, 482 (Alaska 2006) (citing *Marathon Oil Co. v. ARCO Alaska, Inc.*, 972 P.2d 595, 600 (Alaska 1999)).

[3]  *State v. Alaska Pub. Emps. Ass'n*, 199 P.3d 1161, 1162 (Alaska 2008) (citing *Alaska State Emps. Ass'n/AFSCME Local 52 v. State*, 74 P.3d 881, 882 (Alaska 2003)).

[4]  *Id.* (quoting *Baseden v. State*, 174 P.3d 233, 237 (Alaska 2008)) (internal quotation marks omitted).

[5]  *Id.* (quoting *Dep't of Pub. Safety v. Pub. Safety Emps. Ass'n*, 732 P.2d 1090, 1093 (Alaska 1987)) (internal quotation marks omitted).

[6]  *Id.* (citing *OK Lumber Co. v. Alaska R.R. Corp.*, 123 P.3d 1076, 1078 (Alaska 2005)).

[7]  *Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 660 (Alaska 1995) (quoting *Pub. Safety Emps. Ass'n*, 732 P.2d at 1093).

[8]  *Bd. of Educ., Fairbanks N. Star Borough Sch. Dist. v. Ewig*, 609 P.2d 10, 13 (Alaska 1980) (internal citations and quotation marks omitted).

arbitrability.'"[9]  And "[w]here one party alleges that the arbitrator has exceeded his or her authority, we will affirm the arbitrator's conclusion as to the scope of his or her powers if 'the arbitrator's conclusion is reasonably possible.' "[10]  Thus, "[c]laims that the arbitrator construed the contract in a manner exceeding his or her powers are reviewable, but will only be reversed 'if all fair and reasonable minds would agree that the construction of the contract made by the arbitrator(s) was not possible under a fair interpretation of the contract.' "[11]

## IV.  DISCUSSION

### A.  The Arbitrator Did Not Exceed His Authority.

Alaska's Revised Uniform Arbitration Act provides that "the court shall vacate an award made in the arbitration proceeding if . . . an arbitrator exceeded the arbitrator's powers."[12]  Johnson argues that the arbitrator's interpretation of the employment agreement to determine whether it had been breached was not only within the scope of his powers but was also "well-supported by the arbitration filings and the evidence presented at the arbitration hearing."  The Aleut Corporation responds that the arbitrator exceeded his authority by rendering a decision on an issue that "was not submitted or contested due to the agreement between the parties."  But "if the arbitrator's

---

[9]     *Ahtna*, 894 P.2d at 661 (quoting *Alaska State Hous. Auth. v. Riley Pleas, Inc.*, 586 P.2d 1244, 1247 (Alaska 1978)) (internal quotation marks omitted).

[10]     *Kinn v. Alaska Sales & Serv., Inc.*, 144 P.3d 474, 482-83 (Alaska 2006) (quoting *Marathon Oil Co. v. ARCO Alaska, Inc.*, 972 P.2d 595, 600 (Alaska 1999)); *see also Ahtna*, 894 P.2d at 661-62 (citing *Breeze v. Sims*, 778 P.2d 215, 217 (Alaska 1989); *Univ. of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132, 1137 (Alaska 1974)).

[11]     *Kinn*, 144 P.3d at 487 (quoting *Modern Constr.*, 522 P.2d at 1137).

[12]     AS 09.43.500(a)(4).  Alaska's Revised Uniform Arbitration Act governs agreements to arbitrate made on or after January 1, 2005.  *See* AS 09.43.300(a).  The employment agreement provides that the agreement shall be governed by Alaska law.

determination of arbitrability is a reasonably possible one that can seriously be made in the context in which the contract was made, then the court should affirm that finding."[13] Because we defer to the arbitrator's interpretation of the dispute submitted and because the arbitrator had the authority to resolve the arbitrable dispute on a different basis than asserted by the parties, we conclude that the arbitrator did not exceed his powers.[14]

1. **The arbitrator reasonably interpreted the dispute submitted for arbitration and that dispute was arbitrable.**

We do not review an arbitrator's interpretation of a contract provision for ordinary error.[15] Instead, we consider an arbitrator's interpretation of the contract issues only in the context of reviewing the arbitrability of the dispute.[16] An arbitrator's determination of the issues submitted for arbitration is "entitled to significant weight."[17] Moreover, "an arbitrator's interpretation of the question presented for arbitration, like an arbitrator's contract interpretation, should not be subjected to plenary review."[18] Although we have held that arbitrators may exceed their authority by addressing a

---

[13] *Ahtna*, 894 P.2d at 662 (quoting *Modern Constr.*, 522 P.2d at 1137) (internal citations and quotation marks omitted).

[14] *See id.*; *Dep't of Pub. Safety v. Pub. Safety Emps. Ass'n*, 732 P.2d 1090, 1096-97 (Alaska 1987) (giving deference to arbitrator's interpretation of the questions submitted to arbitration).

[15] *See Kinn*, 144 P.3d at 487 n.38 (citing *Ahtna*, 894 P.2d at 660-61).

[16] *See id.* (citing *Ahtna*, 894 P.2d at 661).

[17] *Pub. Safety Emps. Ass'n*, 732 P.2d at 1097 (quoting *Anchorage Med. & Surgical Clinic v. James*, 555 P.2d 1320, 1324 (Alaska 1976), *overruled on other grounds by Ahtna*, 894 P.2d at 662) (internal quotation marks omitted).

[18] *Id.* at 1096.

dispute not submitted to arbitration,[19] we have emphasized that "[a]rbitrators need not be bound by the narrowest interpretation of the issue presented to them."[20]  As long as the arbitrator's interpretation of the question posed for arbitration is reasonable in light of the circumstances, we will not interfere with the bargained-for arbitration award.[21] There are two reasons for such great deference to the arbitrator on questions submitted for arbitration:

> First, subjecting interpretations of arbitration submissions to plenary review would [weaken] our intent to foster recourse to arbitration proceedings for dispute resolution. . . .  Second, a deferential standard of review of submission interpretation forecloses the possibility that Alaska's courts will become mired in numerous disputes involving the exact scope of submission in arbitration proceedings.[22]

The scope of a demand for arbitration should not be subjected to the same strict standards of construction that would be applied in formal court proceedings.[23]

Not only do we defer to the arbitrator's interpretation of the question presented, we "apply a presumption in favor of arbitrability," resolving all doubts in

---

[19]     *See Sea Star Stevedore Co. v. Int'l Union of Operating Eng'rs, Local 302*, 769 P.2d 428, 431-32 (Alaska 1989) (holding that the arbitrator exceeded his authority by addressing a question that was not submitted to arbitration and actually emerged six weeks after the original issue arose).

[20]     *Pub. Safety Emps. Ass'n*, 732 P.2d at 1096.

[21]     *See id.*

[22]     *Id.* at 1097 (citing *Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F.2d 299, 302 (3d Cir. 1982)).

[23]     *Id.* (quoting *Kurt Orban Co. v. Angeles Metal Sys.*, 573 F.2d 739, 740 (2d Cir. 1978)).

favor of arbitrability.[24] We will affirm the arbitrator's determination of arbitrability if it is "reasonably possible."[25]

Here, the arbitrator found that the parties had presented a dispute consisting of three questions:

> 1. Did the termination of Claimant's employment by Respondent breach the Contract?
>
> 2. Was the termination of Claimant's employment justified by Claimant's subsequent breach of the Contract?
>
> 3. What damages, if any, should be awarded in this case?

We conclude that the arbitrator's interpretation of the arbitrable dispute was reasonable and supported by the expansive arbitration clause in the employment agreement, Johnson's broad claim for breach of contract in his statement of claims, and the full evidence submitted to the arbitrator. We also hold that the arbitrator's determination that the dispute was arbitrable clearly meets our "reasonably possible" standard.[26]

### a.    The arbitration clause of the employment agreement

First, Johnson and The Aleut Corporation agreed in their employment contract to refer to an arbitrator "[a]ny and all disputes" regarding Johnson's employment contract and termination. The language and scope of the negotiated binding arbitration clause of the employment agreement was quite broad: "Any and all

---

[24]    *Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 662 (Alaska 1995) (citing *Univ. of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132, 1138 (Alaska 1974)); *see also United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

[25]    *Marathon Oil Co. v. ARCO Alaska, Inc.*, 972 P.2d 595, 600 (Alaska 1999) (quoting *Pub. Safety Emps. Ass'n Local 92 v. State*, 895 P.2d 980, 984 (Alaska 1995), *aff'd on reh'g*, 902 P.2d 1334 (Alaska 1995)) (internal quotation marks omitted).

[26]    *See id.*

disputes . . . arising out of, relating in any way to or in connection with this Agreement and/or Executive's employment with or termination of employment from the Company . . . shall be solely settled by an arbitration . . . ." Thus, as the arbitrator concluded, this dispute, which focused on whether the termination of Johnson constituted a breach of contract, fell squarely within the scope of the contract's arbitration clause.

### b. Johnson's statement of claims

Moreover, in submitting the dispute to arbitration, Johnson's claim was broadly framed: He contended that The Aleut Corporation had breached the employment agreement by failing to provide timely notice of its decision to terminate him. In his statement of claims, Johnson requested that "the arbitrator find the Company failed to timely exercise its option to terminate the automatic two-year extension of Mr. Johnson's Contract beyond March 31, 2010, [and] that the Company termination of Mr. Johnson's employment as CEO effective March 31, 2010, constituted a breach by the Company of the Contract." Johnson's claim was based on the "company's breach of the Contract." The arbitrator evidently understood Johnson's claim in this manner, as the arbitrator summarized the issue before him in similarly broad terms: whether "the termination of Claimant's employment by Respondent breach[ed] the Contract." And in order to determine whether a contract has been breached, it is predictably necessary to interpret the language and meaning of the contract that is alleged to have been breached. As the superior court recognized, "the parties do not appear to have explicitly limited the issues submitted to the arbitrator." Although Johnson acknowledged that he "was required to notify the Chair of the Board in writing 120 days before the initial term expired of the Company's option to cancel the automatic extension," the arbitrator ultimately had the authority to rely on his "interpretation of . . . [the contract] provisions and his findings regarding . . . contractual obligations" to determine whether the contract had been

breached.[27]   Therefore, Johnson's statement of claims indicates that the arbitrator's interpretation of the arbitrable dispute was reasonable.

### c.      The evidence presented at the arbitration hearing

Finally, as Johnson correctly observes, the arbitration briefs and hearing "encompassed much more than the discussion [of] the notice provision."  In light of the evidence presented, the arbitrator reasonably interpreted the dispute as whether The Aleut Corporation breached the employment agreement by terminating Johnson.  Over the course of the two-day hearing, the arbitrator heard evidence not only on the narrow factual issue of Lind's receipt of Johnson's notice letter, but also on the initial negotiation of the employment agreement, the parties' intent surrounding the provision for automatic extension of the term, the recent negotiations, and Johnson's performance as CEO.  And The Aleut Corporation explained that the motivation behind Paragraph 5 was a concern that the provision for terminating Johnson "could be inadvertently forgotten," so the attorney decided to include "a 'triggering' notice that would remind the Board of its 90 day notice obligation."  And it was uncontested that The Aleut Corporation was actually aware of its option to cancel the automatic extension of Johnson's term.  In sum, the arbitrator reasonably interpreted the nature of the dispute based on the scope of the evidence presented, and the arbitrator's determination on arbitrability was "reasonably possible."[28]

---

[27]     *See Ahtna*, 894 P.2d at 663 (affirming the arbitrator's decision based on the arbitrator's interpretation of various joint venture agreement provisions and his findings on contractual obligations).

[28]     *See Marathon Oil*, 972 P.2d at 600; *Ahtna*, 894 P.2d at 663.  The Aleut Corporation relies on *International Association of Machinists & Aerospace Workers, District 776 v. Texas Steel Co.*, 639 F.2d 279 (5th Cir. Unit A Mar. 1981). But that decision supports our deference to arbitration awards and stands for the proposition that

(continued...)

## 2. The arbitrator had the authority to provide a different basis than the parties for resolving the dispute.

"[A]n arbitrator's misconstruction of a contract is not open to judicial review, except on questions of arbitrability."[29] We have explained "that the arbitrator's reasons for the award will not be scrutinized by the court, so long as he has resolved an arbitrable dispute."[30] The question presented in this case is whether the arbitrator was

---

[28](...continued) arbitrators have broad authority "to decide just what the issue was that was submitted to it and argued by the parties," resolve procedural questions, and fashion appropriate remedies. *See id.* at 283 (quoting *Waverly Mineral Prods. Co. v. United Steelworkers of Am.*, 633 F.2d 682, 685 (5th Cir. 1980)). The Aleut Corporation also claims that the superior court properly decided that Johnson's concessions on the meaning of Paragraph 5 limited the issues before the arbitrator. Though the parties' statement of uncontested facts provided that "Paragraph 5 required Johnson to notify the Chair of [The Aleut Corporation's] Board . . . of [The Aleut Corporation]'s option to cancel," Johnson's mere interpretation of the agreement does not constitute a concession. *See Kingery v. Barrett*, 249 P.3d 275, 282 (Alaska 2011) (" 'A judicial admission, to be binding, must be one of fact and not a conclusion of law or an expression of opinion.' " (quoting *Hayes v. Xerox Corp.*, 718 P.2d 929, 931 (Alaska 1986))); *Pugliese v. Perdue*, 988 P.2d 577, 580-81 (Alaska 1999) (concluding that statements were not binding admissions because they were not the clear, deliberate, and unequivocal statements of fact required for a judicial admission). More importantly, the fact that Johnson focused on one basis for decision — the argument that he had provided actual notice — cannot preclude the arbitrator from relying on a different basis for decision. *See* discussion *infra* Part A.2.; *Ahtna*, 894 P.2d at 662-63.

[29]     *OK Lumber Co. v. Alaska R.R. Corp.*, 123 P.3d 1076, 1078 (Alaska 2005) (quoting *Ahtna*, 894 P.2d at 661) (internal quotation marks omitted).

[30]     *Ahtna*, 894 P.2d at 663 (upholding arbitrator's award because arbitrator had not exceeded scope of authority by relying on a different basis than the parties put forth); *see also Kinn v. Alaska Sales & Serv., Inc.*, 144 P.3d 474, 488 (Alaska 2006) (affirming arbitrator's award because the arbitrator was not so obviously wrong that all fair and reasonable minds would find it impossible under the contract); *OK Lumber*, 123 P.3d at (continued...)

free to resolve an otherwise arbitrable dispute on a different basis than argued by the parties.

We answered that question in *Ahtna, Inc. v. Ebasco Constructors, Inc.*, where we concluded that arbitrators do have the authority to resolve an arbitrable dispute on a basis that "differs from that which . . . was initially argued by the claimant."[31] In that case, Ahtna and Ebasco entered into a joint venture agreement to prepare construction proposals for a federal radar project that was later canceled.[32] After learning of the cancellation, Ebasco instructed Ahtna to prepare a claim showing its preparation expenses so that Ebasco could submit the claim to the federal government to seek remuneration for Ahtna's significant preparation costs.[33] Although Ahtna submitted its claim to Ebasco, Ebasco failed to submit Ahtna's claim to the federal government in a timely manner.[34] Ahtna argued that because Ebasco had failed to submit a timely claim on behalf of Ahtna, it had therefore breached the joint venture agreement and owed damages for the resulting losses.[35]

Relying on provisions of the agreement that had not been cited or relied on by the parties, the arbitrator concluded that Ebasco had breached a different provision

---

[30](...continued)
1078-79 (concluding that arbitrator had not exceeded powers by resolving a matter of disagreement under the lease); *Dep't of Pub. Safety v. Pub. Safety Emps. Ass'n*, 732 P.2d 1090, 1097 (Alaska 1987) (deciding that the arbitrator had properly interpreted the issues submitted and that the arbitrator had not exceeded his authority).

[31]    *Ahtna*, 894 P.2d at 663.

[32]    *See id.* at 658.

[33]    *See id.* at 659.

[34]    *See id.*

[35]    *See id.*

of the joint venture agreement by failing to reimburse Ahtna directly for its expenses under the reimbursement clause of the joint venture agreement.[36] Ebasco disputed the arbitration award, claiming that Ahtna had not presented this "reimbursement rationale" to the arbitrator but rather had argued that Ebasco had failed to timely submit a claim on behalf of Ahtna stemming from their joint venture.[37] Ebasco contended that "the only issue before the arbitrator in this case was Ebasco's alleged failure to timely file Ahtna's claim, and that by partly basing his award on a separate theory — the reimbursement rationale — the arbitrator exceeded his jurisdiction."[38]

In *Ahtna*, we upheld the arbitrator's award, concluding that the arbitrator had "merely given a *basis* for the award which differs from that which, according to Ebasco, was initially argued by the claimant."[39] We recognized that although the arbitrator's rationale for the decision may have differed from that argued by the parties, there were "not two disputes, but one: whether Ebasco breached the [Joint Venture Agreement]."[40] We reasoned that the arbitrator's reliance on the reimbursement clause "to resolve a dispute arising under the contract . . . was clearly within the arbitrator's power, given [the Joint Venture Agreement's] command that '[a]ll disputes arising out of this Agreement shall be resolved by arbitration.' "[41] We also concluded that the arbitrator's decision "rest[ed] on the arbitrator's interpretation of various [Joint Venture

---

[36]  *See id.*

[37]  *See id.* at 662.

[38]  *Id.* at 663.

[39]  *Id.* (emphasis in original).

[40]  *Id.*

[41]  *Id.* at 662 (second alteration in original).

Agreement] provisions and his findings regarding Ebasco's contractual obligations during the life of the Joint Venture. As such, it resolve[d] a dispute that [arose] out of the contract, constitute[d] a proper basis for the award, and convince[d] us to reverse the superior court's decision."[42]

Similarly, the arbitrator's decision here relied on the arbitrator's interpretation of Paragraph 5 of the employment agreement and his findings regarding the parties' intent. Even though his rationale for determining that the employment agreement was breached differed from that asserted by Johnson, the arbitrator had the broad authority to interpret the provisions of the employment agreement in deciding whether it had been breached.[43] Because the arbitrator resolved an arbitrable dispute — whether the employment agreement had been breached — and because the arbitrator had the authority to resolve that question on a different theory than that argued by the parties, we conclude that the superior court erred in vacating the arbitrator's award.[44]

---

[42]     *Id.*

[43]     *See id.* at 662-63; *see also OK Lumber Co. v. Alaska R.R. Corp.*, 123 P.3d 1076, 1078-79 (Alaska 2005) (holding that the arbitrator did not exceed his authority because it was necessary to interpret the contract to resolve the parties' dispute).

[44]     The Aleut Corporation further claims that the superior court correctly "recognized the inherent unfairness resulting from Arbitrator Owens's decision to disregard the parties' agreed upon position." The superior court noted that, "[a]lthough not controlling . . . allowing an arbitrator to rule on an issue in a manner contrary to what the parties agreed upon in their filings violates basic tenets of due process because neither party receives notice that the issue is under consideration or an opportunity to be heard." But here the superior court noted that "the arbitration was procedurally unfair" for precisely the same reasons as its decision that the arbitrator exceeded his authority. Because the arbitrator reasonably addressed the issue presented and did not exceed his authority, we conclude that the arbitration did not violate principles of procedural fairness.

**B.      Attorney's Fees**

Because we reverse the superior court's decision to vacate the arbitration award, the award of attorney's fees and costs must be vacated.

**V.      CONCLUSION**

The arbitrator resolved an arbitrable dispute, and we therefore REVERSE the superior court's order vacating the arbitration award.  The case is REMANDED with direction to the superior court to confirm the arbitration award.  The superior court's award of attorney's fees and costs is VACATED.

STOWERS, Justice, dissenting.

In *Sea Star Stevedore Co. v. International Union of Operating Engineers, Local 302*, we held that arbitrators "are given broad powers to fashion remedies on submitted issues. However, an arbitrator does not have the power to reach the merits of a grievance not submitted to him."[1] Here, from the initiation of the arbitration process to its close, Johnson repeatedly averred that he was required to provide notice to The Aleut Corporation in order to trigger his contract extension. Similarly, from the initiation of the arbitration process to its close, The Aleut Corporation agreed. When the arbitrator nevertheless reached the issue of whether such notice was required — concluding that it was not required — he reached an issue not submitted to him by the parties and thereby exceeded his powers.[2] I therefore dissent from the court's opinion today and would uphold the decision of the superior court vacating the arbitration award.

In the first paragraph of Johnson's statement of claims initiating arbitration, he stated the following: "Johnson was required to notify the Chair of the Board . . . of the Company's option to cancel the automatic extension; if he failed to give this notice, then the automatic extension of the Contract would terminate at March 31, 2010, without the Company needing to exercise its option to cancel the automatic extension." Here it is clear that among the myriad issues Johnson might be submitting to the arbitrator, he was explicitly *not* submitting the issue of whether he was required to provide notice. Rather, at the outset, he conceded that such notice was required. Johnson reiterated this concession in the joint statement of uncontested facts that the parties submitted to the arbitrator prior to the arbitration hearing. There, both parties agreed that Johnson's

---

[1]      769 P.2d 428, 431 (Alaska 1989) (citing *Hughes Aircraft Co. v. Elec. & Space Technicians, Local 1553*, 822 F.2d 823, 827 (9th Cir.1987)).

[2]      *See* AS 09.43.500(a)(4) (providing that "the court shall vacate an award made in the arbitration proceeding if . . . an arbitrator exceeded the arbitrator's powers").

employment agreement "required Johnson to notify the Chair of [The Aleut Corporation's] Board, Sharon Lind, of [The Aleut Corporation's] option to cancel the 'Option Term.' " Again, it is clear that both parties agreed Johnson was required to provide notice. If both parties agree on a particular fact, there is no dispute between them as to that fact — and thus no issue for the arbitrator to decide.

Further, at the arbitration hearing Johnson said and did nothing to call into question his concession that he was required to provide notice. On the contrary, he repeatedly affirmed that he was required to provide notice. For example, in Johnson's cross-examination of Thomas Daniel, Johnson's attorney stated that The Aleut Corporation's "obligation to provide the notice to Mr. Johnson . . . was only triggered if Mr. Johnson provided a notice." Similarly, in Johnson's closing argument he stated that "[t]he only way [The Aleut Corporation] was ever obligated to provide notice that it intended to cancel Mr. Johnson's two-year automatic extension was if Mr. Johnson first provided his notice of [The Aleut Corporation's] obligation."

In short, Johnson consistently affirmed throughout the arbitration process that his employment agreement required him to provide notice in order to trigger the contract extension. The superior court was therefore correct when it concluded that "it is not reasonably possible that the scope of the arbitration required the arbitrator to interpret the CEO Contract and determine if the Reminder Notice was a condition precedent to the automatic renewal. . . . [T]he Court cannot find that where the parties both agree that a particular outcome will occur if certain conditions are not met, the arbitrator is free to disregard that agreement. That is exactly what happened in this case." Consequently, the superior court correctly ruled that the arbitrator "exceeded his power when he concluded that his authority included the power to interpret the contract" with respect to the issue of whether Johnson was required to provide notice.

In support of its decision today that the arbitrator did not exceed his powers, the court points to three sources of evidence: (1) the arbitration clause of the employment agreement; (2) Johnson's statement of claims; and (3) the evidence provided at the arbitration hearing. Each of these sources of evidence, however, fails to show that Johnson submitted the issue of whether he was required to provide notice.

First, it is true that Johnson's contract included a broad arbitration clause. It is also true that if Johnson had chosen to submit to arbitration the issue of whether he was required to provide notice, such issue would have been within the scope of the arbitration clause and within the arbitrator's authority to decide. But, regardless of the scope of the arbitration clause, the arbitrator is empowered to decide only those issues that are submitted to him.[3] Here, despite the breadth of the arbitration clause, Johnson chose to narrow the scope of the arbitration and concede that at least one aspect of his employment agreement — whether he was required to provide notice — was not in dispute.

Second, the court observes that Johnson's statement of claims was "broadly framed" and generally based on the "company's breach of the Contract." However, the next-to-last paragraph of Johnson's statement of claims summarized his claim in the following terms: "For the foregoing reasons, Mr. Johnson requests the arbitrator find [The Aleut Corporation] failed to timely exercise its option to terminate . . . [and] that [the] termination . . . constituted a breach by the [Corporation] of the Contract." Nowhere in the foregoing paragraphs of Johnson's statement of claims did he argue that he was not required to provide notice; rather, he clearly and explicitly stated that he was required to provide notice (and argued that he had, in fact, provided such notice).

---

[3] *See, e.g.*, *Advanced Micro Devices, Inc. v. Intel Corp.*, 885 P.2d 994, 1006 (Cal. 1994) ("Even where the parties' original contract included a broad arbitration clause, the arbitrator's powers may be restricted by the limitation of issues submitted.").

Finally, the court cites the range of evidence presented at the arbitration hearing in support of the conclusion that the issue submitted to the arbitrator was broader than simply the question of whether Lind received Johnson's notice. But the evidence Johnson introduced during the hearing was introduced for the purpose of supporting his argument that he had, in fact, provided notice. As the superior court found, "Johnson never used the evidence he introduced to put the Reminder Notice provision's intent at issue."

In support of its decision today, the court also relies on our decision in *Ahtna, Inc. v. Ebasco Constructors, Inc.*, in which we held that an arbitrator may resolve a contract dispute on grounds that are not submitted by the parties.[4] But we did not hold that an arbitrator may resolve a dispute on grounds that both parties conceded were not in controversy. In other words, in *Ahtna* the claimants (Ahtna) may have failed (by omission) to argue that they were entitled to "reimbursement" under their contract with Ebasco, but they never affirmatively stated that they were *not* entitled to such reimbursement.[5] Here, by contrast, Johnson did not merely fail to raise the question of whether The Aleut Corporation might have been obligated to extend his contract even if he did not provide notice; rather, he affirmatively and repeatedly stated that The Aleut Corporation was obligated to extend his contract (or provide timely notice of non-extension) only if Johnson first provided his notice.

The court today also cites our decision in *Department of Public Safety v. Public Safety Employees Association*, explaining that we grant great deference to arbitrators on questions submitted to arbitration in order to foster recourse to arbitration

---

[4]    894 P.2d 657, 662-63 (Alaska 1995).

[5]    *Id.* at 659-60.

proceedings.[6] This same policy, however, underlies our responsibility to vacate decisions when arbitrators have clearly reached issues not submitted to them. As the superior court points out, arbitration is "inherently a matter of agreement among the parties." It stands to reason that parties will be wary of having recourse to arbitration proceedings if there is the danger that arbitrators will decide issues that both parties have agreed not to submit to the arbitrator. Further, as The Aleut Corporation argues, "[a]n arbitrator exceeding his or her authority is fundamentally different than an arbitrator getting the facts or law of a case wrong" for "when an arbitrator exceeds his or her authority by deciding an issue undisputed by the parties, the parties do not have even the opportunity to present their case on that issue."

In sum, despite Alaska's strong public policy in favor of upholding arbitration decisions, I agree with the superior court that this case "presents the rare scenario where the arbitrator goes beyond the reasonably foreseeable scope of his authority such that the Court must vacate his award." This court has created a line of precedent that gives great — virtually unreviewable — deference to arbitrators' decisions, even where those decisions are factually and legally erroneous. Today's decision extends that deference to also permit an arbitrator to determine what the issue is to be decided, even where both parties agreed they intended the arbitration to resolve a different issue. I fear this court has abrogated its responsibility to review virtually any error in arbitration, and I cannot agree with this decision because I believe the court has a duty to ensure that — at the least — an arbitrator does not exceed the limits of his authority. I therefore respectfully dissent.

---

[6]     732 P.2d 1090, 1097 (Alaska 1987).